1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RENO FUENTES RIOS,

11              Plaintiff,                    No. 2:07-cv-0790 WBS KJN P

12        vs.

13   J.E. TILTON, et al.,

14              Defendants.              <u>ORDER</u>

15   _____/

16              Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in

17   this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action is referred to the

18   undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local General

19   Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302.  Presently pending are several motions,

20   identified below, filed by both plaintiff and defendants.

21   I.  <u>INTRODUCTION</u>

22              This action proceeds on plaintiff's original complaint, filed April 25, 2007,

23   against defendants J.E. Tilton (Secretary, California Department of Corrections and

24   Rehabilitation ("CDCR")), T. Lockwood (Chief, Regulation and Policy Management Branch,

25   CDCR), K. Brandon (Correctional Officer ("CO") at California State Prison-Sacramento ("CSP-

26   S), G. Parker (also a CSP-S Correctional Officer), and J.E. Mayfield (CSP-S Correctional

1

1 Counselor II).[1]

2      The complaint (Dkt. No. 1) alleges that defendants erroneously validated plaintiff

3 as a gang member while incarcerated at CSP-S, resulting in his placement in the maximum

4 security housing unit ("SHU") and continued following to his transfer to CSP-Corcoran, where

5 plaintiff remains incarcerated.  Plaintiff contends that defendants acted without due process

6 because they allegedly relied on fraudulent or unreliable confidential information from staff or

7 other inmates, and/or relied inappropriately on plaintiff's Hispanic ethnic status, locale of

8 commitment, and association with other prisoners within his ethnic group, and/or acted in

9 retaliation against plaintiff for filing administrative grievances.  Plaintiff also alleges that his

10 gang validation and SHU placement have caused him to be repeatedly denied parole.[2]

11      Service of the complaint was found appropriate on the above-named defendants.

12 (Dkt. No. 8, filed March 6, 2008.)  All defendants waived service of process (Dkt. Nos. 16, 22),

13 and filed a motion to dismiss (Dkt. No. 19).  On March 3, 2009, the district judge adopted the

14 findings and recommendations of the former magistrate judge that defendants' motion to dismiss

15 be granted on plaintiff's due process claim against defendant Mayfield, but denied in all other

16 respects; Mayfield remains in this action on plaintiff's other claims.  (Dkt. Nos. 30, 31.)

17      Defendants answered the complaint on March 3, 2009 (Dkt. No. 32), and the court

18 thereafter, on March 13, 2009, issued an order authorizing the commencement of discovery

19 (without imposing deadlines) (Dkt. No. 33).  Defendants filed a motion for summary judgment

20 on November 19, 2009 (Dkt. No. 45), amidst several unresolved discovery disputes.  After the

21 reassignment of this case to the undersigned, this court issued two orders on March 26, 2010:

22 (1) a Discovery and Scheduling Order (Dkt. No. 57), setting a discovery and discovery-motion

23

24      [1]  Defendants' official titles and positions are presented as they appear in the complaint;
they may no longer be current.

25      [2]  Plaintiff's contention that he has been unfairly denied parole based on invalid gang
classification may be actionable in a separate action for a writ of habeas corpus; however, denial
26 of parole is not actionable in a civil rights suit pursuant to 42 U.S.C. § 1983.

1   deadline of July 1, 2010, and a dispositive motion deadline of September 30, 2010; and (2) an

2   order addressing the outstanding discovery disputes and denying defendants' motion for

3   summary judgment without prejudice to the filing of a timely-filed amended motion after the

4   close of discovery (Dkt. No. 58).

5          The court thereafter granted defendants' requests for extensions of time within

6   which to respond to discovery requests.  (Dkt. Nos. 60 (filed 4/23/10), 63 (filed 6/18/10).)  When

7   the court granted defendants' third request for extension of time, the undersigned extended the

8   discovery deadline to August 20, 2010, and the dispositive motion deadline to November 19,

9   2010.  (Dkt. No. 66.)  That order was signed on July 8, 2009, and filed on July 9, 2010.

10          Meanwhile, on July 7, 2010, defendants filed an Amended Motion for Summary

11  Judgment (Dkt. No. 67), while, on July 8, 2010, plaintiff filed a motion to compel discovery and

12  to file an amended complaint (Dkt. No. 71), and his fourth motion for appointment of counsel

13  (Dkt. No. 70).  Defendants filed oppositions to plaintiff's motions (Dkt. Nos. 72, 73), while

14  plaintiff filed motions for extension of time, to strike defendants' motion for summary judgment,

15  and for protective order (Dkt. Nos. 74-76), as well as replies to defendants' opposition to

16  plaintiff's motions (Dkt. Nos. 77, 79, 80), and further briefing in support of plaintiff's motion for

17  protective order (Dkt. No. 78).  These several matters are now addressed by the court.

18  II.  DISCUSSION

19       A.  MOTION TO STRIKE THE AMENDED MOTION FOR SUMMARY JUDGMENT

20          Defendants filed their Amended Motion for Summary Judgment (Dkt. No. 67) on

21  July 7, 2010.  While timely filed within the prior deadlines, the court nearly simultaneously

22  extended the discovery deadline to August 20, 2010 (Dkt. No. 66), thus rendering the motion for

23  summary judgment prematurely filed (through no fault of defendants).  This timing problem, and

24  the fact that there remain outstanding discovery disputes, require that defendants' summary

25  judgment motion be vacated without prejudice to the timely filing of a "Second Amended

26  Motion for Summary Judgment."  Thus, the court will, in substance, grant plaintiff's "Motion to

1   Strike Defendants['] Premature Amended Motion for Summary Judgment Until This Court Rules

2   on Plaintiff['s] Motion to Compel Discovery . . . ." (Dkt. No. 75.)[3]

3        B. <u>MOTION TO COMPEL DISCOVERY</u>

4         Plaintiff has filed one motion that seeks both to compel discovery and leave of

5   court to file an amended complaint. (Dkt. No. 71.) The court first addresses plaintiff's

6   discovery motion; that portion of plaintiff's motion seeking leave to file an amended complaint is

7   addressed separately below.[4]

8         Plaintiff generally challenges defendants' discovery responses as untimely and

9   inadequate, while specifically seeking disclosure of the "name[s] of prison officials who ha[ve] .

10   . . filed or approved confidential information which does not me[e]t the reliability criteria and

11   [was] filed against plaintiff . . . for retaliatory purposes or in [a] discriminatory manner to subject

12   plaintiff to be validated as a prison gang associate by false, unreliable, fraudulent information  . .

13   . ." (Dkt. No. 71, at 14; <u>see</u> <u>generally</u>, <u>id</u>. at 30-73.)

14         Defendants respond in part that these same issues were asserted in plaintiff's

15   discovery motion filed July 23, 2009 (Dkt. No. 39), and that the court has not yet ruled on that

16   motion. However, upon reassignment of this case and extension of the discovery deadline, the

17   undersigned denied this and other pending motions without prejudice to their renewal. (Dkt. No.

18   58, at 2, 4.) Thus, the court now addresses only those matters raised in plaintiff's current

19   briefing; however, as necessary, the court references the discovery requests and responses fully

20   included in plaintiff's July 23, 2009 filing (Dkt. No. 39).

21   ////

---

[3] Although the court could continue the currently filed motion for summary judgment until after the discovery deadline, the undersigned does not know whether defendants will want to revise the motion in light of the discovery ordered herein. Accordingly, the court vacates the motion, subject to refiling by the defendants.

[4] Because plaintiff filed a reply to defendants' opposition to plaintiff's discovery motion, his request for an extension of time (Dkt. No. 74) within which to file such reply will be denied as moot.

1          1.  Plaintiff's Requests for Production (Set One)

2          Plaintiff served on all defendants his Requests for Production (Set One) on March

3  10, 2009, and responses were served by mail on April 24, 2009 (see Dkt. No. 39-1, at 50), which

4  were timely within the 45-day deadline set by the initial discovery order in this case (Dkt. No.

5  33).  Plaintiff initially contends that he received defendants' responses three to four weeks late

6  because they were improperly addressed, failing to designate that plaintiff was housed in the

7  SHU, which had a separate postal box number.[5]  However, plaintiff does not assert that he was

8  prejudiced thereby and the court does not find any prejudice.  Defendants sent their responses to

9  the correct inmate at the correct institution, and the institutional delay in plaintiff's receipt cannot

10 reasonably be attributable to defendants.  Accordingly, plaintiff's motion will be denied to the

11 extent plaintiff seeks, based on an untimeliness argument, to strike defendants' production

12 responses or deem defendants' objections waived.

13         On May 11, 2009, plaintiff sent a letter to defendants requesting generally that

14 they supplement all of their responses.  (Dkt. No. 39-1, at 21.)  In a June 2, 2009 letter,

15 defendants responded in pertinent part (Dkt. No. 39-1, at 51) (emphasis added):

16         Regarding Defendants' response to Request No. 1 [which sought "[t]he
           complete prison file of Reno Fuentes Rios " (Dkt. No. 39-1, at 14)], you
17         requested a **complete copy of your central file**.  Defendants informed you
           that the non-confidential portions of your central file are available for
18         inspection and copying under institutional policies and procedures.  For
           institutional safety and security reasons, you are **not allowed access to the
19         confidential portions of your central file**.  Accordingly, because
           Defendants informed you where the responsive documents can be located,
20         **Defendants' response is complete and cannot be supplemented.**

21         . . . . Regarding Defendants' response to Request No. 9 [which sought
           "[a]ny and all debriefing reports that refer to or described Reno Fuentes
22         Rios" (Dkt. No. 39-1, at 16)], you requested **all debriefing reports that
           refer to or describe you**.  **These are confidential documents which
23         contain other inmates' names, CDC numbers, and gang association
           information**.  Disclosure of these documents would create a hazard to the
24         safety and security of the institution.  Therefore, in the interest of ensuring

25 _____

26         [5]  Plaintiff concedes that defendants began using plaintiff's correct mailing address in
   August 2009.  (Dkt. No. 71, at 36.)

1    institutional safety and security, **Defendants will not produce any**
2    **responsive documents.**

3    Defendants also informed plaintiff that they had provided all documents responsive to plaintiff's

4    Request Nos. 2-8, and 10-14, that they had no documents responsive to plaintiff's Request No.

5    15, and that they were unable to respond to plaintiff's Request No. 16, which posed a question

6    rather than requested documents.

7    Plaintiff challenges each of defendants' responses.  (Dkt. No. 71 at 54-64.)

8    However, for the reasons stated by defendants in their June 2, 2009 letter, the only documents

9    that remain in issue are those sought by plaintiff's Request Nos. 1 and 9.

10    Plaintiff contends that he requires access to his entire prison file (as sought

11    pursuant to Request No. 1) in order to obtain the identity of staff and inmates who provided

12    information about plaintiff's purported gang affiliations, to obtain evidence and identify

13    witnesses in support of plaintiff's claim that he has been wrongly identified as a gang member,

14    and in support of plaintiff's claim that one or more defendants have acted in retaliation against

15    plaintiff.  Plaintiff argues that any truly confidential information can be redacted to protect

16    inmate and institutional security.  In a separate filing, plaintiff has submitted a copy of a

17    completed CDC Form 810 ("Confidential Information Listing") which lists, with cursory details,

18    confidential information in plaintiff's central file that has been withheld from him.  (Dkt. No. 78,

19    at 29-36.)

20    Plaintiff also contends that he requires access to any information obtained during

21    the debriefing of other inmates that has been used against plaintiff (as sought pursuant to Request

22    No. 9), for the same reasons set forth above.  Plaintiff argues that the very nature of debriefings

23    creates unreliable information.[6]  Defendants respond by referencing their briefing filed August 6,

24

---

25    [6]  As explained by plaintiff (Dkt. No. 71, at 63):

26    Any inmate who has a life sentence with the possibility of parole is subjected to a

6

2009.  (Dkt. No. 73, at 3, referencing Dkt. No. 40.)  However, defendants' prior argument in support of their response to plaintiff's Request No. 1 (that defendants are not the custodian of plaintiff's central file) is nonresponsive.[7]  In contrast, defendants' prior argument in support of their response to plaintiff's Request No. 9 focused on inmate and institutional security.[8]  At the

life sentence without the possibility of parole if he is validated as a prison gang "associate," unless he divulge[s] information against himself or others or become[s] an informant for prison authorities or he will die in prison unless he compl[ies] with this requirement and most of the inmates are erroneously validated as a prison gang associate in a discriminatory manner because the highest percentage of inmates validated as a prison gang associate are only Hispanic inmates and usually most of the inmates are erroneously validated and placed in segregation lock-up until they debrief and accept the information which other inmates divulged against him due to the fact that when an inmate debriefs all he has to do is state "x" prisoner is associated [with] a prison gang and usually they target[] inmates they don't like or because they had a personal dislike[] against such inmate then an inmate will become[] labeled as a gang associate without . . . receiving any timely notice of disciplinary report . . . because the debriefer or informant is not required to verify under penalty of perjury that information he gave is true, accurate and correct . . . .

[7] Defendants argued (Dkt. No. 40, at 4):

Defendants are not the custodian of records for Rios's prison file.  To obtain Rios's prison file, Defendants would need to obtain the permission of the custodian of records.  Because Defendants would need to obtain the permission of another to access Rios's prison file, Defendants are not in "control" of Rios's prison file and cannot be compelled to produce it.  Moreover, Defendants cannot be compelled to serve as a free copy service for Rios.  Because Defendants had no responsive documents in their possession, custody, and control, their response complied with Federal Rule of Civil Procedure 34(a) and thus they cannot be compelled to produce anything further.

[8] Defendants argued (Dkt. No. 40, at 6-7) (citations omitted):

In [R]equest 9, Rios asks for all debriefing reports that refer to him.  In Defendants' response, they refused to respond to this request because it requests confidential information the disclosure of which would create a hazard to the safety and security of the institution, and seeks to invade the privacy of other inmates.  Rios claims Defendants' response is deficient because the objections are frivolous and fail to explain why the information sought is not reasonably calculated to lead to the discovery of admissible evidence.

Debriefing reports are generated after an inmate decides to drop out of a gang.  Debriefing reports are confidential memorandums.  Contained within a debriefing report is information regarding the inmate-dropout's gang and active gang

7

1  heart of both disputed requests is the authority of the CDCR to identify information as

2  confidential and to withhold such information even from the inmate most directly impacted by it.

3         "California's policy of assigning suspected gang affiliates to the SHU is not a

4  disciplinary measure, but an administrative strategy designed to preserve order in the prison and

5  protect the safety of all inmates.  Although there are some minimal legal limitations, the

6  assignment of inmates within the California prisons is essentially a matter of administrative

7  discretion." Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997) (citations omitted).

8  Thus, while there exists a liberty interest in freedom from indefinite administrative segregation in

9  California prisons, see, e.g., Ashker v. Schwarzenegger, 2009 WL 801557 (N.D. Cal. 2009), at

10 *13, citing Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986), cert. denied, McCarthy v.

11 Toussaint, 481 U.S. 1069 (1987), and due process requires a "quantum of process" that includes

12 an "informal, nonadversary evidentiary review" at the outset, subject to periodic review,

13 Toussaint, 801 F.2d at 1100-01, citing, inter alia, Hewitt v. Helms, 459 U.S. 460 (1983), not all

14 information relied upon to make the decision to administratively segregate a prisoner need be

15 disclosed to the prisoner.

16        State regulations expressly authorize prison officials to withhold as "confidential"

17 any information that would jeopardize the security of the institution or endanger the safety of any

18 person therein.  Cal. Code. Regs., tit. 15, § 3321(a)(1), (2).  An inmate may not have access to

19 confidential information contained in his own case file, id., § 3370(d) ("No inmate or parolee

20 shall access information designated confidential pursuant to section 3321 which is in or from

21 ────────────────

22    affiliates.  Debriefing reports are kept in the confidential section of the prison
       central files of those inmates who have debriefed.

23    If another inmate were to learn the name and CDC number of a gang dropout, it
       would place the dropout's safety in danger.  Thus, disclosure of debriefing reports

24    to Rios would create a hazard to the safety and security of the institution.  Also,
       because debriefing reports are stored in the inmate-dropout's central file,

25    disclosure of this information to Rios would violate other inmates' privacy.
       Accordingly, Defendants properly objected to Rios's request and cannot be

26    compelled to produce anything in response to this request.

1    their own case records file"); nor may an inmate have access to the case records of other inmates,

2    <u>id.</u>, § 3370(b) ("Except by means of a valid authorization, subpoena, or court order, no inmate or

3    parolee shall have access to another's case records file, unit health records, or component

4    thereof").

5           However, confidential information may be relied upon to validate an inmate as a

6    gang member only if such information "meets the test of reliability."  <u>Id.</u>, § 3378(c)(2), citing §

7    3321.[9]  Such confidential information must be disclosed in limited fashion to the affected inmate

8    pursuant to a completed CDC From 1030.  <u>Id.</u>, § 3378(c)(6)(C) ("All source items referenced in

9    the validation . . . shall be disclosed to the inmate at the time of notification.  The inmate shall be

10   given copies of all non-confidential documents unless otherwise requested in writing by the

11   inmate.  Confidential information used in the validation or inactive status review shall be

12   disclosed to the inmate via a CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure

13   Form.").)  Such disclosure includes the following details:  "The documentation given to the

14   inmate shall include:  (A) The fact that the information came from a confidential source [and]

15   (B) As much of the information as can be disclosed without identifying its source including an

16   evaluation of the source's reliability; a brief statement of the reason for the conclusion reached;

17   and, a statement of reason why the information or source is not disclosed."  <u>Id.</u>, § 3321(b)(3)(A),

18   (B).

19           These regulations therefore require that defendants disclose to plaintiff, in

20   response to his Request No. 1, and in the restricted format set forth above, any information in

21

22      [9]  <u>See</u> Cal. Code. Regs., tit. 15, § 3321(b)(1) ("No decision shall be based upon
   information from a confidential source, unless other documentation corroborates information

23   from the source, or unless the circumstances surrounding the event and the documented
   reliability of the source satisfies the decision maker(s) that the information is true."); and §

24   3321(c) ("A confidential source's reliability may be established by one or more of the following
   criteria:  (1) The confidential source has previously provided information which proved to be

25   true.  (2) Other confidential source have independently provided the same information.  (3) The
   information provided by the confidential source is self-incriminating.  (4) Part of the information

26   provided is corroborated through investigation or by information provided by non-confidential
   sources.  (5) The confidential source is the victim.")

1  plaintiff's central file that has been designated "confidential" and relied upon to validate plaintiff

2  as a gang member.  The information set forth in the CDC Form 810 responsive to plaintiff's

3  central file request does not appear to provide all of this information.  Moreover, the prior

4  argument of defendants that they are not the custodian of records for plaintiff's prison file (see

5  n.6, supra) is unsatisfactory.  The Attorney General's Office, which generally represents all

6  CDCR defendants, shall work with the litigation coordinators for CSP-Sacramento and CSP-

7  Corcoran, and any other implicated institution, to arrange for the disclosure of information from

8  plaintiff's central file as directed herein.

9          Accordingly, defendants shall, within thirty (30) days of the filing date of this

10  order, personally serve plaintiff with a supplemental response to plaintiff's Request No. 1, as

11  described in the conclusion of this order.

12          In contrast, plaintiff does not have a right to the debriefings of any other inmate.

13  To the extent that such information impacts plaintiff, it should be included in his central file and

14  will be discovered in limited form pursuant to his order.  The court will therefore deny plaintiff's

15  motion to compel a further response to his Request No. 9.

16          2.  Plaintiff's Interrogatories (Set One)

17          Plaintiff served on all defendants his Interrogatories (Set One) on April 3, 2009,

18  and responses were served by mail on May 18, 2009 (see Dkt. No. 39-3, at 13, 26, 41, 61, 69),

19  which were timely within the 45-day deadline set by the initial discovery order in this case (Dkt.

20  No. 33).  Thus, plaintiff's initial contention that defendants waived their objections to plaintiff's

21  interrogatories because untimely served is without merit.

22          Plaintiff sent a letter to defendants on June 12, 2009, requesting that defendants

23  supplement their responses.  In a June 30, 2009 letter, defendants responded in pertinent part

24  (Dkt. No. 39-3, at 70):

25          The only information omitted is in Defendant Brandon's response to
           Interrogatory No. 11, part four, in which you request the names of the
26          inmates referred to in the confidential documents used to validate you as

1      an associate of the Mexican Mafia.  This information cannot be revealed to
2      you because it would invade those inmates' privacy and place their safety
        in danger.

3      Plaintiff now asserts only generally that "[e]ach defendant refused to fully

4 cooperate with discovery based on same repetitive objections and ambiguous assumptions, non-

5 responsive, incomplete, with frivolous answers."  (Dkt. No. 71, at 67.)  Plaintiff also states,

6 incorrectly, that he "did not request[] the disclosure of confidential information which could

7 create a hazard to the safety and security of the institution or others."  (Id. at 66.)

8      Based on the principles of confidentiality set forth above, and because plaintiff

9 has failed to articulate any cognizable basis for ordering further answers to his Interrogatories

10 (Set One), this request will be denied.

11         3.  Plaintiff's Interrogatories (Set Two)

12      Plaintiff challenges the answers to his Interrogatories (Set Two) served,

13 respectively, on defendants Brandon (served on October 30, 2009), Parker (served on February 7,

14 2010), Mayfield (served on February 16, 2010), Tilton and Lockwood (each served on May 12,

15 2010).  (Dkt. No. 71, at 69-72.)

16      Noting the shortened thirty-day deadline for serving discovery responses set by

17 this court's March 26, 2010 Discovery and Scheduling Order (Dkt. No. 57), plaintiff first

18 contends that he has been prejudiced by this court's extensions of time granted to defendants to

19 respond to plaintiff's additional discovery, particularly Tilton and Lockwood, resulting in

20 disclosure so close to the previous discovery deadline of July 1, 2010, that it foreclosed a

21 mutually beneficial meet and confer.  (Dkt. No. 71, at 69-70.)  However, plaintiff's motion was

22 drafted before this court extended the discovery deadline to August 20, 2010.  Accordingly,

23 plaintiff's motions on this basis as to Tilton and Lockwood will be denied.

24      Plaintiff challenges the refusal of defendants Brandon, Parker and Mayfield to

25 answer more than 25 of plaintiff's interrogatories.  (Id. at 71-73.)  Defendants respond correctly

26 (Dkt. No. 73, at 6-8), that absent a stipulation of the parties or order of this court, they were not

1    required to answer more than the first twenty-five of plaintiff's interrogatories, which includes

2    subparts.  See Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a

3    party may serve on any other party no more than 25 written interrogatories, including all discrete

4    subparts").  While "[l]eave to serve additional interrogatories may be granted to the extent

5    consistent with Rule 26(b)(2),"[10] id., plaintiff asserts only that "the information [that remains]

6    requested is reasonably calculated to lead to the discovery of admissible evidence in this action."

7    (Dkt. No. 71 at 72.)  The court's review of plaintiff's interrogatories demonstrates that they are

8    ponderous and multifaceted, often assuming facts not in evidence and seeking inappropriate

9    answers from defendants, such as concessions to ultimate legal issues and citations to legal

10   authority.  The court finds, therefore, that defendants' objections have been properly interposed,

11   that there is no basis upon to compel supplemental answers, and no basis upon which to

12   authorize the propounding of additional interrogatories.  Accordingly, the court finds no error in

13   the answers of defendants Brandon, Parker or Mayfield to plaintiff's Interrogatories (Set Two),

14              4.  Plaintiff's Requests for Admissions

15              Plaintiff challenges the answers of all defendants to plaintiff's Requests for

16   Admissions served on August 28, 2009.

17   _____

18   [10]  Limitations on discovery are guided by Fed. R. Civ. P. 26(b)(2)(C), which provides in
     full:

19

20        (C) On motion or on its own, the court must limit the frequency or extent of
          discovery otherwise allowed by these rules or by local rule if it determines that:

21        (i) the discovery sought is unreasonably cumulative or duplicative, or can be
22        obtained from some other source that is more convenient, less burdensome, or less
          expensive;

23        (ii) the party seeking discovery has had ample opportunity to obtain the
          information by discovery in the action; or
24

25        (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
          considering the needs of the case, the amount in controversy, the parties'
          resources, the importance of the issues at stake in the action, and the importance
26        of the discovery in resolving the issues.

1   Pursuant to the court's review of plaintiff's 190 requests for admission served

2 upon Tilton (Dkt. No. 77-1, at 55-124), and Tilton's answers thereto (Dkt. No. 73, Exh. A), the

3 court concludes that defendant Tilton has fully complied with the requirements set forth in

4 Federal Rule of Civil Procedure 36.  Tilton properly objected to Request Nos. 3-64, 70-74,

5 76-107, 110-46, 150, 164-65, 172-74, and 176, on the ground that each improperly asked

6 defendant to admit to the authenticity of quoted portions of the California Code of Regulations

7 and Department Operations Manual.  Such requests are impermissible in scope and unduly

8 burdensome.  Tilton's answers to Request Nos. 69-70, 75, 108-09, 151, 156, 161-63, and 178,

9 were sufficient based on his statement that, after a reasonable inquiry, he did not have sufficient

10 information, knowledge, or belief to admit or deny each request.  See Fed. R. Civ. P. 36(a)(4)

11 ("[t]he answering party may assert lack of knowledge or information as a reason for failing to

12 admit or deny only if the party states that it has made reasonable inquiry and that the information

13 it knows or can readily obtain is insufficient to enable it to admit or deny").  Finally, the court

14 agrees with defendant Tilton that he properly objected to plaintiff's Request Nos. 152-55,

15 157-59, 165-71, 177, and 179-89, on the ground that each improperly sought defendant's

16 admissions to allegations of the complaint.  While a party may "not object solely on the ground

17 that the request presents a genuine issue for trial," Fed. R. Civ. P. 36(a)(5), here the requests

18 improperly and repeatedly sought defendant's acquiescence to the entirety of plaintiff's

19 complaint.

20   Plaintiff similarly challenges the answers of defendants Lockwood, Brandon,

21 Parker and Mayfield to plaintiff's Requests for Admissions (Set One).  For the same reasons set

22 forth above, the court finds no merit to plaintiff's challenges.

23  C. MOTION FOR PROTECTIVE ORDER

24   Plaintiff moves for a "protective order" requiring defendants to respond to

25 plaintiff's outstanding discovery requests, subject to an *in camera* review if necessary, and

26 permitting plaintiff additional time within which to respond to defendant's motion for summary

1    judgment.  (Dkt. No. 76; see also Dkt. No. 78.)  Plaintiff cites a 1999 order of this court

2    authorizing the disclosure of confidential information to a habeas corpus petitioner and his

3    counsel, pursuant to a protective order, <u>Pifer v. Marshall</u>, No.2:87-cv-1623 FCD KJM P (relevant

4    orders filed April 12, 1999 (Dkt. No. 289) and May 27, 1999 (Dkt. No. 290), and <u>Pratt v.</u>

5    <u>Rowland,</u> 770 F. Supp. 1399 (N.D. Cal. 1991), wherein a civil rights plaintiff seeking release

6    from administrative segregation was permitted access to confidential documents pursuant to a

7    "tightly drafted protective order."  <u>Id</u>. at 1401 n.1.

8           The court, at his juncture, does not perceive the need to order the disclosure of

9    confidential information or, therefore, to issue a protective order.  The court has reviewed the

10   exhibits submitted by defendants in support of their motion for summary judgment, and it

11   appears that only a few rely on undisclosed confidential information.  Plaintiff should respond to

12   this information to his best ability based on the information currently available to him.  Should

13   the court determine, upon substantive review of defendants' motion, that it is necessary to review

14   information that is being withheld, it will order the documents *in camera* and, at that time, decide

15   to what extent disclosure should be made to plaintiff.

16          Accordingly, plaintiff's motion for protective order will be denied with respect to

17   the requested disclosure of confidential information; plaintiff's further request for additional time

18   within which to respond to defendants' motion for summary judgment will be denied as moot.

19          D.   <u>MOTION FOR LEAVE TO AMEND COMPLAINT</u>

20          Plaintiff seeks leave of court "to amend his complaint and to add additional

21   defendants involved in this action for failing to correct inaccuracies and unreliable information

22   presented to the classification committee members to validate and retain plaintiff [] in the . . .

23   SHU. . . ."  (Dkt. No. 71, at 8.)  Plaintiff identifies the following as the defendants he seeks to

24   add:  (1) "the CSP-Sacramento Warden T. Malfi and his classification committee members and

25   counselors for refusing to correct the unreliable and altered information . . . ," (2) "the new Chief

26   Secretary Director assigned to the California Department of Corrections and Rehabilitation

14

1   (CDCR) for failing to prescribe . . . clear regulations which mandates (sic) what conduct is

2   prohibited. . . .," (3) "CDCR Office of Correctional Safety (OCS) members involved in this

3   action who are the decision makers in charge to validate inmates as a prison gang associate . . .,"

4   and (4) "the CSP-Corcoran SHU Warden and Classification Committee members for conducting

5   a meaningless classification review in regard to plaintiff's alleged gang validation . . . ." (id. at 8-

6   9.)  Plaintiff has not included a copy of his proposed amended complaint (as required by Local

7   Rule 137(c), although this omission is not determinative under these circumstances.

8          Since defendants have answered the complaint and substantial discovery has

9   taken place in this case, plaintiff may amend his complaint only by leave of court or by written

10   consent of defendants.  Fed. R. Civ. P. 15(a)(2).  A court should freely grant leave to amend a

11   pleading when justice so requires.  Id.; Foman v. Davis, 371 U.S. 178, 182 (1962).  However,

12   here the court finds that amendment of the complaint at this time would be both futile and unduly

13   prejudicial to defendants.  "Liberality in granting a plaintiff leave to amend is subject to the

14   qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad

15   faith, and is not futile.  Additionally, the district court may consider the factor of undue delay

16   [although] [u]ndue delay by itself . . . is insufficient to justify denying a motion to amend."

17   Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999).

18          Nearly two years ago, in January 2009, when the former magistrate judge made

19   his findings and recommendations concerning defendants' motion to dismiss, the court instructed

20   plaintiff how to seek leave to file an amended complaint.  (See Dkt. No. 30, at 10-11.)  When the

21   district judge adopted the magistrate judge's findings and recommendations on March 3, 2009

22   (Dkt. No. 31), defendants immediately answered the original complaint (Dkt. No. 32) and a

23   discovery order issued (Dkt. No. 33).  Plaintiff then proceeded with the discovery process (see,

24   e.g., Dkt. No. 35 et seq.), and did not seek leave to amend his complaint.  To grant plaintiff's

25   request at this time may result in extensive additional (but likely duplicative) discovery and a

26   significant delay in the final disposition of this action.  The defendants whom plaintiff now seeks

1    to add are new supervisory personnel who may be responsible, if at all, for the periodic review of

2    plaintiff's gang validation status rather than his initial classification, which is at the heart of this

3    action.  To the extent that these individuals are successors in the official capacities held by the

4    named defendants, they will be parties to this action.  Fed. R. Civ. P. 25(d)(1) (successor of

5    public officer defendant named in his official capacity is automatically substituted as a party).

6    The court therefore perceives no significant benefit to plaintiff by the addition of any of these

7    defendants at this time.

8           Accordingly, plaintiff's motion for leave of court to file an amended complaint

9    will be denied.

10          E.  MOTION TO APPOINT COUNSEL

11          For the fourth time, plaintiff seeks appointment of counsel.  (Dkt. No. 70; see also

12   Dkt. Nos. 25, 34, 41; see also, Dkt. Nos. 28, 42.)   Plaintiff contends that he, compared to the

13   State Attorney General's office, is disadvantaged in legal training and resources, because English

14   is his second language, and because plaintiff has limited access to the prison law library due to

15   his incarceration in administratively segregated housing.  Plaintiff asserts that the court's failure

16   to appoint counsel has resulted in a denial of due process and equal protection, and subjected

17   plaintiff to double jeopardy.

18          The challenges faced by plaintiff are not dissimilar to those faced by most

19   prisoners pursuing civil rights actions and do not implicate constitutional rights.  District courts

20   lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v.

21   United States District Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the

22   court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell

23   v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

24   (9th Cir. 1990); Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984).  A finding of

25   exceptional circumstances requires a likelihood that plaintiff will succeed on the merits of his

26   action coupled with a limited ability to articulate his claims "in light of the complexity of the

legal issues involved." <u>Agyeman v. Corrections Corp. of America</u>, 390 F.3d 1101, 1103 (9th Cir. 2004) (citations and internal quotations omitted). "Neither of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under section 1915(d)." <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986) (fn. omitted),

The court does not find the required exceptional circumstances in the instant case. While there may be some likelihood of success on the merits of plaintiff's claims, plaintiff has repeatedly demonstrated his ability to adequately (and prolifically) present his claims, including those pertinent to his discovery issues. Thus, the court again finds that appointment of counsel is not warranted at this time.

F.  <u>ADMONITION TO PLAINTIFF</u>

Plaintiff has sought to comply with the rules of this court and for conducting discovery. However, the progress of this case has been impeded by plaintiff's frequent, voluminous and often repetitive filings. The instant matters have required the court's review of (and defendants' response to) nearly a thousand pages of handwritten documents. Such endeavors have been required throughout this case. This action is not the only case before this court, yet it has required an inordinate amount of the court's time, often to review briefs and declarations that are duplicative in content yet presented with new titles. Plaintiff is formally cautioned that a litigant proceeding in forma pauperis may suffer restricted access to the court where it is determined that he has filed excessive motions in a pending action. <u>DeLong v. Hennessey</u>, 912 F.2d 1144 (9th Cir. 1990); <u>see also</u> <u>Tripati v. Beaman</u>, 878 F2d 351, 352 (10th Cir. 1989). Accordingly, if plaintiff does not exercise appropriate restraint in the future, the court will expressly consider whether to restrict plaintiff's access to the court for the remainder of this litigation.

The dates for filing and responding to defendants' further amended motion for summary judgment are set forth below. Plaintiff is reminded of the content requirements of his

1    opposition.[11]

2    III.  CONCLUSION

3         For the foregoing reasons, IT IS HEREBY ORDERED that:

4         1.  Plaintiff's Motion for Discovery (Dkt. No. 71) is granted in part.  Within thirty

5    (30) days of the filing date of this order, defendants shall personally serve plaintiff with a

6    supplemental response to plaintiff's Request No. 1, Requests for Production (Set One), which

7    may be set forth in a CDC Form 1030 or similarly format, and includes all information contained

8    in plaintiff's central file that was initially relied upon to validate plaintiff as a gang affiliate, and

9    has been thereafter relied upon to maintain such validation, properly redacted as set forth in

10   California Code of Regulations, Title 15, Sections 3321 and 3378.

11        2.  Plaintiff's Motion for Discovery (Dkt. No. 71) is denied on all other bases.

12

13   [11]  Pursuant to Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert.
     denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), plaintiff
     is advised of the following requirements for opposing a motion for summary judgment made by a
14   defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Such a motion is a
     request for an order for judgment in favor of the defendant without trial.  A defendant's motion
15   for summary judgment will set forth the facts that the defendant contends are not reasonably
     subject to dispute and that entitle the defendant to judgment.  To oppose a motion for summary
16   judgment, plaintiff must show proof of his or her claims.  Plaintiff may do this in one or more of
     the following ways.  Plaintiff may rely upon statements made under penalty of perjury in the
17   complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and
     plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies.
18   Plaintiff may serve and file one or more affidavits or declarations setting forth the facts that
     plaintiff believes prove plaintiff's claims; the person who signs an affidavit or declaration must
19   have personal knowledge of the facts stated.  Plaintiff may rely upon written records, but plaintiff
     must prove that the records are what plaintiff claims they are.  Plaintiff may rely upon all or any
20   part of the transcript of one or more depositions, answers to interrogatories, or admissions
     obtained in this proceeding.  If plaintiff fails to contradict the defendant's evidence with
21   counteraffidavits or other admissible evidence, the defendant's evidence may be taken as the
     truth and the defendant's motion for summary judgment granted.  If there is some good reason
22   why such facts are not available to plaintiff when required to oppose a motion for summary
     judgment, the court will consider a request to postpone consideration of the defendant's motion.
23   If plaintiff does not serve and file a written opposition to the motion or a request to postpone
     consideration of the motion, the court may consider the failure to act as a waiver of opposition to
24   the defendant's motion.  If the defendant's motion for summary judgment, whether opposed or
     unopposed, is granted, judgment will be entered for such defendant without a trial and the case
25   will be closed as to that defendant.
          Plaintiff was previously reminded of these requirements in this court's order filed April
26   25, 2008.  (Dkt. No. 15, at 3-4.)

                                                    18

1       3.  Plaintiff's Motion for Leave of Court to File an Amended Complaint (Dkt. No.

2  71) is denied.

3       4.  Plaintiff's Motion for Protective Order (Dkt. No. 76) is denied without

4  prejudice for the reasons set forth above.

5       5.  Plaintiff's Request for an Extension of Time (Dkt. No. 74) is denied as moot.

6       6.  Plaintiff's Motion for Appointment of Counsel (Dkt. No. 70) is denied without

7  prejudice.

8       7.  Plaintiff's Motion to Strike (Dkt. No. 75) Defendants' Amended Motion for

9  Summary Judgment is granted.

10       8.  Defendants' Amended Motion for Summary Judgment (Dkt. No. 67) is vacated

11  without prejudice to the filing of a "Second Amended Motion for Summary Judgment," which

12  should be served and filed during the week of November 15-19, 2010.[12]

13       9.  Plaintiff shall serve and file his Opposition within twenty-one (21) days after

14  service of Defendants' Second Amended Motion for Summary Judgment.

15       10.  Defendants may serve and file a Reply within fourteen (14) days after service

16  of plaintiff's Opposition.

17       SO ORDERED.

18  DATED:  September 23, 2010

22  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

23  rios0790.misc.09.10

[12]  These dates are consistent with the deadlines set by the court's most recent scheduling
order.  (Dkt. No. 69.)