1   TODD M. NOONAN (CA State Bar No. 172962)
    JOHN S. WHITTAKER (CA State Bar No. 251791)
2   MEGAN A. SAMMUT (CA State Bar No. 287772)
    RUSSELL J. COOPER (CA State Bar No. 293282)
3   **DLA PIPER LLP (US)**
    400 Capitol Mall, Suite 2400
4   Sacramento, CA  95814
    Telephone:    916.930-3200
5   Facsimile:    916.930-3201

6   Attorneys for Plaintiff
    RENO FUENTES RIOS

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  RENO FUENTES RIOS,                    CASE NO.  2:07-cv-00790 KJN (PC)

12          Plaintiff,                    **PLAINTIFF'S BRIEF ADDRESSING
                                          TRIAL ISSUES PURSUANT TO THE
13          v.                            COURT'S JANUARY 22, 2015 ORDER**

14  J.E. TILTON, et al.,                  Date:  TBD
                                          Time:  TBD
15          Defendants.                   Courtroom: 25
                                          Trial Date:  Not Set
16                                        Action Filed:  May 20, 2008

17      **INTRODUCTION**

18          Pursuant to the Court's January 22, 2015 Order, Plaintiff Reno Fuentes Rios respectfully

19  submits this brief addressing the following issues for the Court's consideration in advance of trial:

20  (A) bifurcation of liability and damages; (B) Plaintiff's proposed use of confidential material at

21  trial; (C) whether the jury should be instructed regarding either the validation committee's finding

22  that the gang validation evidence supported validation, or the Court's subsequent finding that

23  Plaintiff's validation as a gang associate satisfied the "some evidence" standard; and (D)

24  appropriate remedies if the jury finds for Plaintiff on his procedural due process and/or retaliation

25  claims, including whether the jury can award compensatory damages for the time Plaintiff spent

26  in the SHU.

27

28

DLA PIPER LLP (US)
SACRAMENTO
                                        -1-

**A.      The Court Should Bifurcate the Issues of Liability and Damages at Trial**

Bifurcating the issues of liability and damages at trial is appropriate in this case and would aid in judicial economy and avoid prejudice to Plaintiff.  District courts have broad discretion to bifurcate trials.  *James v. Wilber*, 2012 WL 6607290, *1 (E.D. Cal., Dec. 18, 2012) (citing Fed. R. Civ. P. 42(b)).  Here, bifurcation would expedite the matter by allowing for the presentation of evidence to the jury only on the issue of liability for Plaintiff's retaliation and procedural due process claims, while reserving the issue of damages, including the presentation of evidence on compensatory and punitive damages, to be determined if and when the jury determines a finding of liability on either or both of Plaintiff's claims.  In addition to expediting the presentation of evidence during the liability phase, Plaintiff believes that a streamlined presentation of damages evidence following a finding of liability would be more efficient than presenting damages evidence during the liability phase.  Also, depending on what specific claims and defendants remain if liability is found, bifurcation would potentially save time in the presentation of damages evidence, including evidence of punitive damages.  *Id.* (ordering bifurcation of punitive damages in § 1983 case and noting that "the general practice of the Court is to bifurcate the punitive damages phase in actions such as this").

Bifurcation of liability and damages would also minimize the risk of unfair prejudice to Plaintiff.  As explained in further detail in Sections C and D, *infra*, the issue of the committee's finding of sufficient evidence to validate Plaintiff and the fact that Plaintiff was ultimately validated and sent to the SHU for seven years, are only relevant to the issue of damages, where Defendants would have the burden of proving that Plaintiff would nonetheless have been validated and assigned to the SHU even if Defendants had not violated his constitutional rights.  Bifurcation would thus avoid the risk of this evidence unfairly prejudicing Plaintiff's case on the issue of liability for Plaintiff's retaliation and due process claims, where the jury will be asked to determine Defendants' motivations at the time they decided to initiate and pursue Plaintiff's validation, and whether they afforded him the right to an informal hearing.  *See* Section C, *infra*.

**B.      Plaintiff Should Be Permitted to Introduce Redacted Versions of Two Confidential Source Items to Show that Defendant Parker Did Not Comply with Applicable CDCR Regulations and Procedures.**

In support of Plaintiff's retaliation claim against Defendant Parker, Plaintiff seeks to introduce redacted versions of two confidential source documents that show that Parker did not comply with governing sections of the California Code of Regulations and applicable CDCR procedures when he validated plaintiff as a gang associate.  Parker's failure to comply with applicable regulations is probative of his retaliatory motive in validating Plaintiff as a gang associate.  Plaintiff needs to use the two underlying source documents because Parker's failure to comply with CDCR regulations and procedures is not apparent on the form CDC 128-B or 1030 chronos themselves, in which Parker purports to summarize the contents of the underlying source items.  This evidence is relevant in proving that Parker's primary motivation in validating Plaintiff was to retaliate against Plaintiff for exercising his First Amendment rights, and that Parker was willing to violate regulations and procedures in order ensure that Plaintiff was validated.  Defendants would not be unfairly prejudiced by Plaintiff's proposed use of these materials.  Defendants may be able to provide non-retaliatory explanations for Parker's failure to comply with regulations, challenge Plaintiff's contentions that he did not comply with regulations, or argue that Parker considered three other pieces of evidence described on form 128-B and Plaintiff is only challenging his compliance with regulations with respect to two of them.

Plaintiff seeks to introduce the following documents to demonstrate that Parker did not comply with CDCR regulations and procedures:

1. June 1, 2006 Confidential Memorandum Authored by Defendant Parker

On the form CDC 128-B he prepared in support of validating Plaintiff as a gang associate, Parker claimed that his June 1, 2006 memorandum "identified RIOS [sic] name on a list of active EME associates functioning under the gangs [sic] policies, procedures, and guidelines to benefit the gang."  Parker wrote, "the list was authored by inmate MARTINEZ, Ray …, a validated EME associate and the intended recipient was inmate PADILLA, Jacques …, a validated EME member housed at Corcoran State Prison (COR)."

1   Plaintiff will seek to introduce a redacted version of the underlying memorandum to show

2   that the Parker failed to include a copy of the supporting documentation showing that Plaintiff's

3   name was in fact on the list of purported "active EME associates functioning under the gang's

4   policies, procedures, and guidelines to benefit the gang."  Parker's failure to include the

5   documentation required by the Department of Operations Manual ("DOM"), section 52070.21.1,

6   suggests that his motive in pursuing Plaintiff's gang validation was not to serve a valid

7   penological purpose, but to punish Plaintiff for filing grievances.  Indeed, Parker authored his

8   June 1, 2006 memorandum without identifying the fact that he lacked a copy of the supporting

9   evidence, and then used it to validate Plaintiff.  Parker's conduct is therefore highly probative of a

10  retaliatory motive.

11      Plaintiff proposes to redact all of the information and names contained in Parker's June 1,

12  2006 Confidential Memorandum, with the exception of (1) Parker's general descriptions of the

13  list, including all headings corresponding to the list; (2) Parker's transcription of Martinez'

14  references to the list; and (3) Plaintiff's name as it appears on Parker's transcription of the list.

15  For purposes of examining Parker as a witness, Plaintiff's counsel proposes to provide Parker

16  with an unredacted copy of the June 1, 2006 Memorandum for purposes of questioning Parker

17  about the whether he included a copy of the supporting documentation purporting to include

18  Plaintiff's name on a list of "active EME associates."  Plaintiff's counsel is willing to discuss

19  potential alternatives with Defendants for the presentation of this evidence, such as a stipulation

20  as to the contents of the document.

21  2.   March 25, 2003 Confidential Memorandum Prepared by Sgt. Bales

22      Parker's form CDC 128-B describes this source item as "a Debriefing report dated March

23  25, 2003, authored by Sergeant J. Bales identifying RIOS selling drugs under the authority of

24  inmate Vivar, Felipe … a validated EME associate."  Plaintiff will seek to introduce the

25  underlying source item in redacted form to show the jury that the date of the alleged gang activity

26  corresponding to Plaintiff was outside the time period necessary to qualify as "current gang

27  activity" under title 15 of the California Code of Regulations, section 3378(c)(1) at the time

28  Parker initiated gang validation proceedings against Plaintiff.  Parker's failure to comply with this

1   regulation is probative of his retaliatory motive in validating Plaintiff as a gang associate.

2          Plaintiff's counsel proposes to redact the contents of the entire debriefing report with the

3   exception of the year disclosed in the debriefing report that corresponds to the alleged gang

4   activity of Plaintiff and the content provided in the debriefing report identifying Plaintiff that

5   corresponds to Parker's summary in the form CDC 128-B.  Plaintiff's counsel is willing to

6   discuss potential alternatives with Defendants for the presentation of this evidence, such as a

7   stipulation as to the contents of the document.

8   **C.     The Jury Should Not Be Instructed Regarding the Committee's Finding or the**

9   **Court's Finding that Some Evidence Supported Plaintiff's Validation Because**

10  **Neither is Relevant to Plaintiff's Remaining Due Process and Retaliation Claims and**

11  **Such Evidence Should Not Be Admitted.**

12         The Court has asked the parties to address whether the jury should be instructed regarding

13  the Court's previous finding that Plaintiff's validation as a gang associate satisfied the "some

14  evidence" standard.  A related issue is whether the jury should be instructed regarding the

15  committee's finding that the evidence submitted by Defendant Parker supported Plaintiff's

16  validation.  These inquiries require a discussion of the admissibility of evidence or testimony

17  regarding both the committee's and the Court's findings.

18         As explained below, neither the committee's finding that the evidence supported

19  Plaintiff's validation, nor the Court's subsequent finding that the evidence met the deferential

20  "some evidence" test should be admitted because these findings are irrelevant to Plaintiff's

21  remaining claims for retaliation and violation of due process.

22  1.     The Committee's Finding That the Evidence Supported Plaintiff's Validation Is Not

23         Relevant to Plaintiff's Remaining Claims.

24         Evidence is relevant if it "has any tendency to make a fact more or less probable than it

25  would be without the evidence."  Fed. R. Evid. 401.  The fact that the committee approved

26  Plaintiff's validation does not make it any more or less likely that Defendants Parker and

27  Mayfield retaliated against Plaintiff when they initiated and pursued his gang validation, nor does

28  such fact make it any more or less likely that Plaintiff was provided the opportunity to present his

1    views as due process standards require.

2        With regard to Plaintiff's retaliation claims, the crux of each claim is the motivation of

3    Defendants Parker and Mayfield, respectively.  While Defendants have indicated that the

4    committee's decision shows that Defendants were not motivated by retaliation, that later finding

5    does not bear on Defendants' motivation at the time they decided to validate Plaintiff.  The trier

6    of fact should determine Defendants' motivation based on the facts leading up to the decision to

7    validate, which would include the evidence Defendants had in front of them, their experience and

8    training, their interactions with Plaintiff, and the procedures they followed or did not follow.  A

9    committee's decision, either approving or rejecting evidence submitted by an IGI, would be not

10   be relevant in determining the IGI's motivation at the time of validation.  As explained in *Bruce*

11   *v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003), Defendants cannot successfully assert that a gang

12   validation pursued and obtained in retaliation of a protected right served a valid penological

13   purpose, even if the inmate "may have arguably ended up where he belonged."  Thus, even if the

14   committee's validation indicates that Plaintiff arguably ended up in the Security Housing Unit

15   ("SHU") based on legitimate evidence of gang affiliation,[1] such a finding is not relevant to

16   Defendants' motivation in validating Plaintiff.  Put differently, because a retaliation claim can

17   stand even where the validation itself was based on reliable information, as in *Bruce*, it follows

18   that evidence supporting the reliability of that information—such as the committee's approval of

19   the same—is not relevant to any piece of the retaliation claim.[2]

20       Similarly, the committee's finding has no bearing on determining liability on Plaintiff's

21   remaining due process claim.  The only question with regard to that claim is whether Plaintiff was

22   given the opportunity to present his views, as required by law.  *See, e.g., Toussaint v. McCarthy*,

23   801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*,

24   515 U.S. 472, 482-84 (1995).  The fact that the committee found that the evidence Defendant

---

[1] Plaintiff does not concede the reliability of the evidence used to validate him and place him in the SHU, but recognizes that the point is settled for purposes of the current litigation before this Court.

[2]  The Ninth Circuit's view on retaliation claims is not as Machiavellian as Defendants may hope, and the ends—even if supported by the committee's findings—do not justify the means.

1   Parker presented supported Plaintiff's validation is wholly irrelevant to the issue of whether

2   Defendants provided Plaintiff with the required hearing.  Accordingly, the jury should not be

3   instructed regarding the committee's finding in that context.

4   2.   Any Probative Value of the Committee's Finding is Substantially Outweighed by the Risk

5        of Unfair Prejudice, Confusing the Issues, and Misleading the Jury.

6        In the alternative, even if the Court finds that the committee's finding is relevant to

7   Plaintiff's remaining retaliation and/or due process claims, relevant evidence may be excluded if

8   its probative value is substantially outweighed by a risk of unfair prejudice, confusing the issues,

9   or misleading the jury.  Fed. R. Evid. 403.  Rule 403 calls for a balancing test that is left to the

10  court's discretion.  Among other factors, courts consider the importance of the evidence, the

11  possibility of alternate proof, and the length of the chain of inferences needed to establish the

12  important fact.  *See* Jones & Rosen, Fed. Practice Guide: Civil Trials and Evidence (The Rutter

13  Group 200) ("Jones"), ¶¶ 8:4516–4519.  As set forth above, evidence of the committee's finding

14  is only remotely—if at all—relevant to the claims that remain in this case, and is therefore not an

15  important fact to establish.  In addition, the chain of inferences required to arrive at an arguably

16  relevant fact is long, and the alternate proof of the same fact is more direct.

17       Presumably, Defendants will argue that they did not initiate and pursue Plaintiff's

18  validation in retaliation for his grievances, but rather because they believed Plaintiff was a gang

19  associate.  To support this belief, defendants may point to the five 1030 Chronos and form CDC

20  128-B that describe the evidence used to validate Plaintiff; they may seek testimony from Mr.

21  Parker regarding his view of the evidence and his reasons for submitting the validation package

22  when he did; they may even seek testimony from Plaintiff regarding his alleged gang

23  involvement.  The committee's acceptance of the evidence used to validate Plaintiff is far

24  removed from Defendants' motivation for validating Plaintiff, and even further removed from an

25  indication that Plaintiff was provided an opportunity to be heard.[3]

26       In addition, evidence or a jury instruction indicating that the committee found that the

27

28  _____

[3] Indeed, it is difficult to know how Defendants may attempt to link the committee's findings to the question of whether Mr. Rios was provided a hearing.

1    evidence supported Plaintiff's validation would be unfairly prejudicial to Plaintiff, would confuse

2    the issues, and would be likely to mislead the jury.  "In context, unfair prejudice means evidence

3    that though relevant might lead a jury to ignore the facts and the law and decide a case on an

4    emotional basis or for an improper reason." *Buckley v. Evans*, 2007 WL 2900173, *4 (E.D. Cal

5    Sept. 28, 2007).  If the committee's finding is allowed to come in, through evidence or an

6    instruction, then the jury is likely to improperly conclude that the committee's finding establishes

7    that Defendants did not retaliate against Plaintiff.  The jury may similarly conclude that it does

8    not matter if Defendants retaliated against Plaintiff, and it does not matter if Plaintiff was

9    provided a hearing, because he ended up where he belonged.  But as discussed above, the

10   committee's determination that the evidence supported validation is irrelevant to Defendants'

11   motivation in validating Plaintiff, and irrelevant to the question of whether he received a hearing.

12   These issues are likely to be conflated and confused, unfairly prejudicing Plaintiff.  For these

13   reasons, evidence of the committee's finding should be deemed inadmissible.

14   3.     The Court's Finding that the Validation Evidence Satisfied the "Some Evidence" Test is

15          Not Relevant to Plaintiff's Remaining Claims and Any Reference Thereto Should be

16          Excluded.

17          For the reasons described above with respect to the committee's determination that the

18   evidence supported Plaintiff's validation, this Court's subsequent finding that the evidence used

19   to validate Plaintiff satisfied the "some evidence" test is wholly irrelevant and should also be

20   excluded from both phases of trial.  Not only does all of the reasoning laid out above apply

21   equally to the Court's finding, but the Court's finding is even less relevant to Plaintiff's

22   remaining retaliation and due process claims because the Court applied a different—and highly

23   deferential—standard in reviewing the confidential information.

24          CDCR officials must comply with the Code of Regulations and CDCR guidelines when

25   validating inmates as gang associates.  Under the Code, validation of a prisoner as a gang

26   associate must be based on three or more independent "source items of documentation" that are

27   indicative of actual membership or association with validated gang members or associates.  At

28   least one source item must provide a "direct link" to a current or former validated member or

DLA PIPER LLP (US)
SACRAMENTO

-8-

1    associate of the gang, or to an inmate/parolee who is validated by the department within six

2    months of the established or estimated date of activity identified in the evidence considered.  15

3    Cal. Code Regs. § 3378(c)(3) & (4).  In making the decision to initiate and pursue Plaintiff's

4    validation, Defendants were aware of and supposedly held to that standard.  In contrast, however,

5    federal due process law only requires that there be "some evidence" with "some indicia of

6    reliability of the information" that prison officials use to place inmates in administrative

7    segregation. *Superintendent v. Hill*, 472 U.S. 445, 454–56 (1985).  *See also Bruce*, 351 F.3d at

8    1283 (noting that any one piece of evidence may meet the "some evidence" standard if that piece

9    has "sufficient indicia of reliability"); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

10         California regulations and CDCR procedures would be rendered meaningless if

11   defendants to retaliation and due process claims could escape liability by arguing that evidence

12   supporting their actions complied with the deferential "some evidence" standard even though they

13   violated applicable state regulations and CDCR guidelines in validating inmates.  The "some

14   evidence" standard sets a much lower bar than the standards dictated by the state regulations and

15   CDCR guidelines, which should have guided Defendants' actions with respect to Plaintiff.

16   Evidence or instruction to the jury that the Court found Plaintiff's validation was based on "some

17   evidence" is thus wholly irrelevant to the motivations of the Defendants in initiating that process,

18   and wholly irrelevant to the question of whether he was provided the opportunity to be heard.  *See*

19   *Bruce*, 351 F.3d at 1289 ("some evidence" finding was not a defense to prisoner plaintiff's

20   retaliation claim, even though "he may have *arguably* ended up where he belonged"); *see also*

21   *Avina v. Medellin,* 2010 WL 3516343, *7–8 (E.D. Cal. Sept. 3, 2010) (question of whether there

22   was "some evidence" supporting plaintiff's validation is moot if plaintiff was not given the

23   opportunity to rebut the evidence used to validate him).

24         Moreover, even if the Court finds that its "some evidence" finding may be tangentially

25   relevant to Plaintiff's remaining claims, any probative value is substantially outweighed by the

26   risk of unfair prejudice, confusing the issues, or misleading the jury.  Fed. R. Evid. 403.  Again,

27   the reasoning outlined above with respect to the committee's finding applies with equal—if not

28

greater—force here.[4]  If the jury is instructed that the Court reviewed the evidence *in camera* and found that "some evidence" supported Plaintiff's validation, the jury is almost certainly going to accept that ruling, determine that Plaintiff ended up where he belonged, and see no reason to question the motivation of Defendants or to determine if any constitutional violation occurred, contrary to the holdings in *Bruce* and *Avina*.  Essentially, if instructed on the Court's finding, the jury would be likely to confuse its tasks of (1) determining Defendants' *motive* for validating Plaintiff, and (2) determining if Plaintiff was afforded a hearing, with the separate issue of whether the evidence satisfied procedural due process under federal law, which is not an issue for the jury to decide.  This confusion would be highly prejudicial to Plaintiff.  Moreover, the Court would necessarily have to explain the "some evidence" test to the jury, and how it differs from what is required under state law.  Understanding the nuances of the "some evidence" test is challenging enough for attorneys, let alone for lay jurors.  Trying to explain the Court's finding under the "some evidence" test is likely to add additional and unnecessary confusion to the issues in the case.

     Trial bifurcation does not impact this analysis.  Though the issue of harm stemming from Plaintiff's time in the SHU will be one to tackle in the damages phase (see discussion below re burden shifting, at Section D(2)), the Court's "some evidence" finding has no place in either phase.  As explained in further detail below, the burden will be on Defendants to show that Plaintiff would have been validated and placed in the SHU even absent any constitutional violation.  The fact of Plaintiff's validation and the process by which he was validated should thus be admissible at the appropriate time during the damages phase.  But the Court's some evidence finding nevertheless has no bearing on whether Plaintiff would have been validated absent Defendants' retaliation, nor does it weigh on whether he would have been validated had he been provided an informal hearing.

---

[4] Indeed, a jury is more likely to be influenced by the Court's finding in this context than by the finding of a faceless committee because of the impartial view of the Court and the jury's daily interaction with the Court at trial.

**D.**     **Plaintiff is entitled to compensatory damages and injunctive relief if he prevails on his due process and retaliation claims, and the Court's "some evidence" ruling does not foreclose these remedies.**

If Plaintiff prevails, his available remedies should include:  (1) damages for mental and emotional distress; (2) damages for time spent in the SHU; and (3) punitive damages and injunctive relief.  Plaintiff can recover compensatory damages for any injury he suffered as a result of Defendants' deprivation of his constitutional rights.  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)).  These damages can include compensation for mental and emotional distress, *Stachura*, 477 U.S. at 307, and Plaintiff's substantive loss of liberty as a result of Defendants' unlawful actions.  *Reyes v. Horel*, 2012 U.S. Dist. LEXIS 101331, *3–*4 (N.D. Cal., July 19, 2012), 5:08-cv-04561 (ECF No. 166) (finding compensatory damages were appropriate for a deprivation of liberty as a result of a due process violation); *Hazle v. Crofoot*, 727 F.3d 983, 991-92 (9th Cir. 2013) (finding the plaintiff's loss of liberty as a result of defendants' violation of plaintiff's First Amendment rights mandated compensatory damages).  Plaintiff also is entitled to punitive damages, upon a proper showing, *Stachura*, 477 U.S. at 306, n.9, and injunctive relief in the form of expungement of his gang validation and a new hearing for Defendants' constitutional violations.  *Lira v. Cate*, 2009 LEXIS 91292, 73-74 (N.D. Cal. Sept. 30, 2009), 3:00-cv-0905 (ECF No. 456); *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991).

1.     <u>Plaintiff Does Not Have to Show a Physical Injury Resulting from Defendants' Retaliation to Recover Compensatory Damages for Mental and Emotional Injuries.</u>

The U.S. Supreme Court has found that mental and emotional distress are compensable injuries under § 1983.  *Carey*, 435 U.S. at 264.  While the Prison Litigation Reform Act ("PLRA") bars prisoners from seeking mental or emotional injury in a federal civil action absent a showing of physical injury, 42 U.S.C. § 1997e(e), the Ninth Circuit has held that the PLRA "does not apply to First Amendment Claims regardless of the form of relief sought."  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).  Thus, if Plaintiff prevails on his retaliation claims against Defendants, he can collect compensatory damages for any injury caused by Defendants'

1  unlawful retaliation, including mental and emotional harm.  Plaintiff also can collect damages for

2  mental and emotional harm caused by Defendants' due process violations if Plaintiff can prove a

3  physical injury, which need not be significant but must be more than *de minimis*.  *Oliver v. Keller*,

4  289 F.3d 623, 627 (9th Cir. 2002).

5     2.     The Time Plaintiff Spent in the SHU Because of Defendants' Unlawful Retaliation and

6            Due Process Violations Is a Compensable Injury.

7       Plaintiff also can recover compensatory damages for time spent in the SHU as a result of

8  Defendants' unlawful retaliation or denial of his procedural due process rights regardless of

9  whether Plaintiff proves a physical injury.  In addition to not applying to retaliation claims, the

10  PLRA does not bar compensatory damages premised on "Fourteenth Amendment violations, and

11  not on any alleged mental or emotional distress."  *Oliver*, 289 F.3d at 630.  Prisoners possess a

12  liberty interest under the Fourteenth Amendment "when a change occurs in confinement that

13  imposes an 'atypical and significant hardship ... in relation to the ordinary incidents of prison

14  life.'"  *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S.

15  472, 484 (1995)).  The Ninth Circuit found a 27-month confinement in similar conditions to the

16  SHU created an atypical hardship for an inmate sufficient to implicate a protected liberty interest

17  under the Fourteenth Amendment.  *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir.

18  2014).  Following the Ninth Circuit's reasoning in *Brown*, Plaintiff's confinement in the Corcoran

19  State Prison SHU from December 2006 to January 2014 constitutes an atypical hardship, creating

20  a constitutionally protected liberty interest.  09/03/14 Pretrial Order (ECF No. 165 at 4); *see also*

21  *Lira*, 2009 LEXIS 91292 at 73-74 (finding indefinite administrative segregation at Pelican Bay

22  State Prison that lasted eight years imposed an atypical and significant hardship sufficient to

23  create a liberty interest for inmates in avoiding assignment to the SHU).

24       Compensatory damages follow the deprivation of a liberty interest if the deprivation was

25  not justified.  *Carey*, 435 U.S. at 263.  In other words, if the procedural violation affected the

26  "substantive outcome"—i.e., Plaintiff's confinement in the SHU—then the deprivation was not

27  justified, and Plaintiff can recover compensatory damages for his time in the SHU.  *Reyes*, 2012

28  LEXIS 101331 at *3–*4.  Similarly, if Defendants' unlawful retaliation deprived Plaintiff of his

-12-

1   liberty, compensatory damages are mandatory.  *Hazle*, 727 F.3d at 991-93.

2          The burden should rest on Defendants to prove that their unlawful actions did not affect

3   Plaintiff's confinement in the SHU.  The Ninth Circuit applied this burden-shifting approach to

4   retaliation claims, requiring that defendants prove they "would have reached the same decision . .

5   . even in the absence of the [plaintiff's] protected conduct."  *Thomas v. County of Riverside*, 763

6   F.3d 1167, 1169 (9th Cir. Cal. 2014) (quotations and citations omitted); *see also Riley v. Roach*,

7   572 Fed. App'x. 504, 506 (9th Cir. 2014).  While the Ninth Circuit does not appear to have ruled

8   on which party bears that burden regarding due process claims, the U.S. District for Court for the

9   Northern District of California followed the Third and Sixth Circuits' application of this burden-

10  shifting approach.  Once a plaintiff proves a procedural due process violation, "the burden rests

11  on the defendant to prove that the substantive outcome would have been the same even if the

12  plaintiff's due process rights had been respected."  *Id.* at *4 (citations omitted).  Thus, if

13  Defendants cannot meet that burden regarding any of the claims at issue in this case, Plaintiff is

14  entitled to damages for the time spent in the SHU as a result of Defendants' unlawful retaliation

15  and due process violations.  *Reyes*, 2012 LEXIS 101331 at *6 (citing *Soto v. Lord*, 693 F. Supp.

16  8, 21 (S.D.N.Y. 1988)).

17         The Court's finding that Plaintiff's gang validation was supported by "some evidence"

18  does not foreclose these compensatory remedies. The "some evidence" standard does not apply to

19  retaliation claims.  *Bruce*, 351 F.3d at 1289.  And "[s]imply because defendants *could have* still

20  concluded plaintiff should remain in the SHU does not mean they *would have*" had Defendants

21  provided Plaintiff with the proper procedures.  *Reyes*, 2012 U.S. Dist. LEXIS 101331 at *5.  Due

22  process required that Defendants provide Plaintiff a hearing and an impartial hearing officer.  *See*

23  *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990) (citing *Wolff v. McDonnell*, 418 U.S.

24  539, 571 (1974)).  If Defendants cannot prove that the result would have been the same had they

25  taken those required steps, then Plaintiff can recover compensatory damages for his time spent in

26  the SHU.  This is consistent with § 1983 prisoner cases from the Eastern District of California

27  where a finding of "some evidence" to support a gang validation did not foreclose compensatory

28  damages.  *See Lopez*, 2008 WL 4489898 at *28 (finding some evidence to support plaintiff's

DLA PIPER LLP (US)
SACRAMENTO

WEST\255627451.3          PLAINTIFF'S BRIEF ADDRESSING TRIAL ISSUES, NO. 2:07-CV-00790 KJN (PC)

1   gang validation); *Lopez*, 2:03-cv-01605, Final Jury Instructions, at 13 (allowing the jury to award

2   compensatory damages upon a finding of liability on retaliation and due process claims).

3   3.      <u>Punitive Damages And Injunctive Relief Also Are Available to Plaintiff If He Prevails.</u>

4          Plaintiff additionally is entitled to nominal damages for the violations, *Carey*, 435 U.S. at

5   266, and punitive damages upon the requisite showing of intent, *Stachura*, 477 U.S. at 306, n.9, if

6   he prevails on his claims.

7          Finally, if the jury finds for Plaintiff, he would be entitled to injunctive relief in the form

8   of expungement of his gang validation and a new hearing.  The Northern District of California

9   noted that where prison officials violate a prisoner's due process rights by validating that inmate

10  "without notice and opportunity to present his views, expungement of the gang records is an

11  appropriate remedy."  *Lira*, 2009 LEXIS 91292 at 105 (citing *Norman-Bloodsaw v. Lawrence*

12  *Berkeley Lab.*, 135 F.3d 1260, 1275 (9th Cir. 1998)).  The Eastern District of California reached

13  the same conclusion regarding due process and retaliation claims.  *Avina v. Medellin*, 2010 WL

14  3516343, *9 (E.D. Cal. Sept. 3, 2010) (finding the expungement of a gang validation was a

15  proper remedy where the plaintiff never received an interview); *Lopez v. Cate*, 2013 WL

16  1151980, *2 (E.D. Cal. Mar. 18, 2013) (allowing a plaintiff's claim for injunctive relief in the

17  form of expungement to proceed on a retaliation claim); *see also Corrales v. Vega*, 2013 WL

18  327479, *4 (C.D. Cal. Jan. 28, 2013) (noting that—even where "some evidence" remained—if

19  one source item was used against the plaintiff to validate him in retaliation of a protected right,

20  "he could be entitled to relief from the validation").  Following the expungement of his

21  validation, Plaintiff should receive a new hearing as well because a procedural violation requires

22  "a procedural correction."  *Raditch*, 929 F.2d at 481; *see also Pryer v. Evans*, 2008 WL 131604,

23  at *1 (N.D. Cal. Jan. 11, 2008) (noting the "remedy for a procedurally defective hearing is

24  another hearing").

25         In sum, Plaintiff is entitled to compensatory damages for any injury caused by

26  Defendants' unlawful retaliation, which includes mental and emotional harm and time spent in

27  the SHU.  Plaintiff also can recover compensatory damages for his successful due process claims

28  for mental and emotional harm, if he can show a physical injury, and for the unlawful deprivation

1   of Plaintiff's liberty interest, if Defendants fail to prove their unlawful actions did not injure

2   Plaintiff.  Plaintiff additionally is entitled to nominal and punitive damages, upon a proper

3   showing, and injunctive relief in the form of expungement of his validation and a new hearing.

4

5   Dated:  March 23, 2015                         DLA PIPER LLP (US)

6

7                                                  By: /s/ John S. Whittaker
                                                   JOHN WHITTAKER
8                                                  Attorneys for Plaintiff
                                                   Reno Fuentes Rios
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28