TODD M. NOONAN (CA State Bar No. 172962)
JOHN S. WHITTAKER (CA State Bar No. 251791)
MEGAN A. SAMMUT (CA State Bar No. 287772)
RUSSELL J. COOPER (CA State Bar No. 293282)
**DLA PIPER LLP (US)**
400 Capitol Mall, Suite 2400
Sacramento, CA  95814
Telephone:    916.930-3200
Facsimile:    916.930-3201

Attorneys for Plaintiff
RENO FUENTES RIOS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>J.E. TILTON, et al.,<br><br>　　　　Defendants. | CASE NO.  2:07-cv-00790 KJN (PC)<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' BRIEF ADDRESSING TRIAL ISSUES**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 25<br>Trial Date:  Not Set<br>Action Filed:  May 20, 2008 |

### I.　　INTRODUCTION

　　Pursuant to the Court's January 22, 2015 Order, Plaintiff Reno Fuentes Rios respectfully submits this brief in reply to the points raised by Defendants in their Brief on Trial Issues ("Defs.' Brief").  First, the parties are in agreement that the trial should be bifurcated between liability and damages because Plaintiff seeks more than nominal damages.  Second, Defendants fail to demonstrate that the jury should be informed of either the Court's finding of "some evidence" or the validation committee's findings given the lack of relevance to Plaintiff's remaining claims and substantial risk of unfair prejudice.[1]  Third, while the parties are in general agreement as to proposed redactions to the June 1, 2006, Confidential Parker Memorandum[2], Defendants fail to

---

[1] Defendants do not address the issue of whether the jury should be informed of the committee's findings and instead focus solely on the Court's finding of "some evidence."

[2] Plaintiff will forego seeking to present a redacted version of the March 25, 2003, Confidential Memorandum by Sgt. Bales in light of Defendants' offer to stipulate as to the date of the underlying source item.

-1-

justify their position that the Parker Memorandum should not be presented at trial, even in redacted form, unless the Court adopts Defendants' proposed jury instructions.  Finally, neither the PLRA, nor the Court's finding of "some evidence" close the door on compensatory damages for Plaintiff, including compensation for time spent in the SHU.

## II.    ARGUMENT

### A.  The Parties Agree That the Court Should Bifurcate the Issues of Liability and Damages at Trial

Defendants contend that if Plaintiff seeks compensatory damages or punitive damages, then "Defendants agree with Plaintiff that the trial should be bifurcated."  Defs.' Brief, p. 11:1–3. Plaintiff seeks damages including compensatory and punitive damages.  Therefore, the parties agree that the Court should bifurcate the issues of liability and damages at trial.

### B.  Neither the Court's Finding of "Some Evidence," Nor the Committee's Approval of Parker's Validation Package Should be Told to the Jury Because Neither is Relevant to Plaintiff's Remaining Claims.

1.  <u>The Court's finding of "some evidence" is irrelevant to Plaintiff's remaining due process claim because the question of whether Plaintiff received a timely interview and opportunity to be heard raises a separate and independent claim for violation of due process.</u>

Defendants argue that the Court should instruct the jury that it has ruled on "one element" of Plaintiff's due process claim—whether "some evidence" supported Plaintiff's validation—and found that four of the five source items met the "some evidence" standard.  Defs.' Brief, p. 2:17–21.  But the Court's finding of "some evidence" is <u>not</u> an element of Plaintiff's remaining due process claim for Defendants' failure to provide him with adequate notice and opportunity to be heard.  Rather, Plaintiff pleaded two separate due process violations: (1) that Defendants failed to provide him with adequate notice and a hearing, and (2) that the evidence used to validate him was not reliable.  *See* Plaintiff's Compl. (Dkt. No. 1) at 8:15–19, 16:10–19; 14:3–22; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (complaint written by pro se plaintiff should be liberally construed); *see also* Pl.'s Opp. to Defs' Mot. for Summ. J. (ECF No. 137) at 8:10–25; 10:11–11:9; Court's Ruling on Defs' Mot. for Summ. J. (ECF No. 141) at 21:23–24:1; 28:3–5 (all discussing Plaintiff's due process claims as *two* separate claims).  Defendants have thus conflated

Plaintiff's separate due process claims into one claim in a thinly-veiled attempt to use the Court's finding of "some evidence" to predispose the jury into believing that Plaintiff ended up where he belonged regardless of the procedure afforded.

Not only are the two claims unrelated, but a plaintiff prisoner can prevail on a due process claim for lack of the opportunity to be heard regardless of whether there was "some evidence" to support the validation, and regardless of whether the plaintiff even alleged a due process claim on the basis of the reliability of the evidence. Indeed, due process requires both that a prisoner be given the opportunity to present his views when the investigation begins, *and* that the decision to validate him be based on "some evidence." A violation of just one of these standards is an independent due process violation. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472, 482-84 (1995) ("when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated."); *Avina v. Medellin,* 2010 WL 3516343, *7–8 (E.D. Cal. Sept. 3, 2010) (question of whether there was "some evidence" supporting plaintiff's validation is moot if plaintiff was not given the opportunity to rebut the evidence used to validate him).

Because the Court found that "some evidence" supported Plaintiff's validation, Plaintiff's second due process claim is no longer at issue in this trial. The only remaining due process issues for the jury to decide, then, are whether Plaintiff was given the opportunity to be heard at all and whether he was given reasonable time to prepare for that hearing. The Court should thus reject Defendants' proposed instruction and limit its jury instructions to the actual elements of Plaintiff's remaining due process claim and not elements for claims that have been dismissed prior to trial.

2. <u>The Court's finding of "some evidence" is irrelevant to Plaintiff's retaliation claims against Defendants Parker and Mayfield.</u>

As a preliminary matter, Plaintiff agrees that the first two elements of Plaintiff's retaliation claim are not in dispute: (1) Submitting a grievance is a protected activity and (2)

initiating a gang validation is an adverse action.  Plaintiff does not, however, agree that stipulating to the former would render evidence of Plaintiff's grievances superfluous or otherwise inadmissible.  Indeed, the grievances themselves, how many he filed, and when he filed them are all relevant to Plaintiff's retaliation claim.

As for the remaining elements of retaliation, the Court's finding of "some evidence" is irrelevant to Plaintiff's claims against Defendants Parker and Mayfield.  The crux of a retaliation claim is the defendant's motivation for taking an adverse action against the plaintiff.  Defendants argue that the Court's finding tends "to show that Plaintiff's validation was not a ruse or cover to punish him for filing grievances."  (Defs.' Brief at 3.)  Defendants further state that the Court ruling tends to show that the validation served a legitimate penological purpose and that Defendants were not motivated by a desire to punish Plaintiff.  (Defs.' Brief at 3–4.).

First, again, *Bruce v. Ylst* clearly establishes that Defendants cannot successfully assert that a gang validation pursued and obtained in retaliation of a protected right served a valid penological purpose, even if the inmate "may have arguably ended up where he belonged."  351 F.3d 1283, 1289 (9th Cir. 2003).  Therefore, even if the Court's finding tends to show that Defendants' actions served a valid penological purpose—an argument Plaintiff does not concede—that fact is nevertheless irrelevant (and prejudicial) to Plaintiff's retaliation claim under *Bruce*.[3]

Second, as to Defendants' motivation, the Court's "some evidence" finding cannot be relevant to Defendants' motivation at the time they initiated Mr. Rios's gang validation.  Indeed, the fact that the Court, in 2014, found four source items to be reliable has nothing to do with

---

[3]  Defendants argue that *Bruce* does not apply because the holding is in the context of a motion for summary judgment. Regardless of the procedural stage, however, the standard is the same. Here, as in *Bruce*, there is a genuine issue of material fact as to whether Defendants initiated the gang validation in retaliation of a protected right. Defendants cannot defeat that valid claim simply by asserting that Plaintiff ended up where he belonged. If it could, *Bruce* would hold no water. The *Bruce* court further explained that the penological purpose is not legitimate if the action was taken in retaliation. *Id.* at 1289–90. Whether on summary judgment or at trial, that fact remains true: the asserted penological purpose is not legitimate if Defendants Parker and Mayfield acted to punish Plaintiff for his grievances. Informing the jury of the Court's "some evidence" finding would thus only have the effect of confusing the jury and prejudicing Plaintiff.

Defendants' motivations in 2006. Moreover, the Court's review of the evidence is based on a completely different—and much lower—standard than the standard presumably guiding Defendants when they initiated the validation process. More specifically, the Court was only required to find "some evidence" (meaning a single source) with "some indicia of reliability" to uphold Plaintiff's validation. *Superintendent v. Hill*, 472 U.S. 445, 454–56 (1985); s*ee also Bruce*, 351 F.3d at 1283 (noting that any one piece of evidence may meet the "some evidence" standard if that piece has "sufficient indicia of reliability"); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Under CDCR regulations, however, Defendants were required to base the validation on three or more independent "source items of documentation" that are indicative of actual membership or association, and at least one source item must provide a "direct link" to a current or former validated member. 15 Cal. Code Regs. § 3378(c)(3) & (4). By contrast, the much lower standard applied by the Court on review cannot be used as a measure of Defendants' motivation, when Defendants should have been acting under the much higher standard of CDCR regulations. *See Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013); *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (noting that the standard is "minimally stringent" and "highly deferential").

It would thus be highly prejudicial to Plaintiff if the jury was informed of the Court's finding of "some evidence." Defendants proposed jury instructions would risk confusing the jury with regard to (1) the elements of Plaintiff's *remaining* due process claim based on Defendants' failure to provide him with the opportunity to be heard; (2) whether Plaintiff can successfully assert retaliation if a Court found that he "ended up where he belonged"; (3) the standard by which Parker's conduct should be measured with respect to Plaintiff's validation; (4) whether it matters that Plaintiff did not receive a hearing; and (5) whether it matters that Plaintiff was validated in retaliation for exercising a protected right.

Defendants additionally argue that they must be permitted to present evidence that their motivation behind Plaintiff's validation was the evidence they had in 2006 of his gang affiliation. (Defs.' Brief at 5.) Plaintiff agrees. That evidence can be presented in the form of the 1030 Confidential Disclosure and 128-B Forms, which disclose Plaintiff's alleged gang involvement,

deposition and trial testimony, and applicable CDCR regulations and guidelines. The Court's finding, however, is not evidence of Defendants' motivation. The Court should thus not permit the jury to be informed or instructed with regard to the Court's finding of "some evidence."[4]

Finally, as discussed further below, Defendants would not be prejudiced if Plaintiff is allowed to submit one of the five source items to a jury in redacted form. Defendants argue that the jury will be kept "in the dark" about the other sources, but that is simply not the case. Defendants can present the Form 128-B and the 1030 Confidential Disclosure Form—documents that summarize the underlying five source items—as evidence of Defendants' motivation. The difference between those other sources items and the one Plaintiff wishes to introduce is that the latter was authored by Defendant Parker and thus directly reflects Parker's motivation at the time of Plaintiff's validation.

### C. Plaintiff Should Be Permitted to Introduce a Redacted Version of the June 1, 2006 Parker Memorandum.[5]

Plaintiff should be allowed to introduce a redacted version of the only source item authored by Defendant Parker because that source item is direct evidence of Parker's retaliatory motive.[6] Defendants argue that Plaintiff should not be permitted to present to the jury "some of the confidential source items used to validate Plaintiff … unless the jury is informed of all the source items used to validate him." Defs.' Brief, p. 6:1-3. But Defendants' argument fails to explain how the jury would not be informed of "all the source items" when each source item is documented and summarized in both the 1030 Confidential Disclosure forms and the Form 128-B

---

[4] Similarly, the committee's finding that the evidence supported Plaintiff's validation is not relevant to Plaintiff's remaining due process or retaliation claims. Defendants' brief failed to address the committee's finding and appears to focus solely on the Court's finding. For the reasons stated above, and detailed in Plaintiff's Opening Brief, the committee's finding is similarly irrelevant to Plaintiff's remaining due process claim for failure to provide him a hearing and to his retaliation claim, and the jury should not be instructed or otherwise informed about it.

[5] Following the meet-and-confer process, the parties generally agree that if the Confidential Parker Memorandum is used at trial, identifying information regarding inmates who are not Plaintiff should first be redacted. Additionally, Plaintiff is agreeable to Defendants' request that the attachments to the June 1, 2006 memorandum also be admitted, and that both the memo and attachments be published for the jury's eyes only.

[6] Plaintiff also agrees that a stipulation to the date of the underlying source item found in the March 25, 2003 Bales Memorandum is acceptable in lieu of presenting a redacted version of the source item.

that Parker prepared as part of his validation package.

Plaintiff agrees that the jury should not be misled into believing that there was only one piece of evidence used to validate Plaintiff, but does not believe that will happen given that all five source items are documented and summarized in the 1030 Chrono and 128-B Form. The admissibility of one of the underlying source items should thus not hinge on a jury instruction regarding the Court's finding, as Defendants have suggested. (Defs' Br. at 6.)

More importantly, the difference between the June 1, 2006 Parker memorandum and the other four sources is the author. The June 1, 2006 Parker memorandum, and Parker's compliance with regulations in preparing it, are directly relevant to Parker's motivation in June 2006 and whether his motive in pursuing Plaintiff's gang validation was not to serve a valid penological purpose, but to punish Plaintiff for filing grievances.[7]

**D.     Defendants' Proposed Jury Instructions Are Improper.**

While Plaintiff agrees with a large portion of Defendants' proposed jury instructions, for many of the reasons outlined above, Plaintiff takes issue with them on two main points. First, as discussed at length above, Plaintiff's initial complaint contained allegations of two separate due process violations: one for failure to provide a hearing, and a second for validating him based on unreliable evidence. Because these are two separate claims, the latter of which has essentially been dismissed per the Court's "some evidence" finding, it would be improper to instruct the jury in a way that presents the second claim as an element of the first. Plaintiff therefore proposes an alternate instruction at the end of his brief. Reply, p. 12.

Second, Defendants' proposed instruction regarding Plaintiff's retaliation claim necessarily eliminates Defendant Mayfield from Plaintiff's claim by stating in the instruction that she did not take an adverse action against Plaintiff. Plaintiff has not dismissed Mayfield from the case, and a jury instruction that essentially dismisses her is improper. Plaintiff's proposes a

---

[7] Of course, should the Court agree with Defendants that the Court's finding of "some evidence" should be disclosed to the jury – which Plaintiff contends it should not – then the jury also be informed regarding the Court's specific finding that the Parker memo was not reliable. Assuming the jury is not instructed regarding the "some evidence" finding, however, Plaintiff agrees that it should not be instructed regarding the Court's finding as to the Parker memo exclusively.

second instruction on retaliation at the end of his brief. Reply, p. 13.

Additionally, Plaintiff proposes a third instruction, in line with that provided in *Lopez v. Cook*, 2:03-cv-01605, to address concerns about the jury re-determining the "some evidence" finding, which is no longer an issue in this case. Reply, p. 14.

**E.     The PLRA and the Court's "Some Evidence" Ruling Do Not Foreclose Compensatory Damages for Plaintiff.**

   1.   <u>The Ninth Circuit in *Canell* held that the PLRA does not apply to First Amendment claims, and based on this language, Courts in the Eastern District have found the PLRA does not bar compensatory damages for mental and emotional injuries.</u>

A plain reading of the Ninth Circuit's holding in *Canell v. Lightner* removes First Amendment claims from the purview of the Prison Litigation Reform Act ("PLRA"), regardless of the redress sought for the constitutional violation. While construing the PLRA, the Ninth Circuit did note that "[t]he deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred," the court still held that "§ 1997e(e) does not apply to First Amendment Claims *regardless of the form of relief sought*." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (emphasis added).

Plaintiff could locate no subsequent Ninth Circuit interpretation of *Canell* that disturbs the court's assertion that the PLRA's physical injury requirement does not foreclose damages for mental and emotional harm stemming from a First Amendment claim even when a plaintiff cannot show a physical injury. The Ninth Circuit concluded in *Oliver v. Keller* that the PLRA allowed claims for compensatory damages so long as those damages were not for mental or emotional injuries, but that holding only applied to Fourteenth Amendment violations. 289 F.3d 623, 630 (9th Cir. 2002). *Oliver* left intact *Canell*'s exclusion of First Amendment claims from the PLRA's physical injury requirement. *Id.* at 627, n.5 ("Nothing in our holding today disturbs our prior holding in *Canell*.").

Subsequent cases interpreting *Canell* support this distinction between First and Fourteenth Amendment claims. The Ninth Circuit noted in 2007 that a defendant's argument that damages

Sacramento

WEST\258428890.1

-8-

PLAINTIFF'S REPLY BRIEF ADDRESSING TRIAL ISSUES, NO. 2:07-CV-00790 KJN (PC)

for emotional distress were unavailable to a prisoner plaintiff was "belied by our decision in *Canell* . . . in which we held that the Prison Litigation Reform Act 'does not apply to First Amendment Claims regardless of the form of relief sought.'" *Phillips v. Hust,* 477 F.3d 1070, 1082 n.6 (9th Cir. 2007) *cert. granted, judgment vacated*, 555 U.S. 1150 (2009).[8] Courts in the Eastern District of California have reached the same conclusion. *See Mitchell v. Adams*, 2010 WL 2976073, at *31 (E.D. Cal. July 27, 2010) *report and recommendation adopted*, 2010 WL 3397391 (E.D. Cal. Aug. 27, 2010) ("Section 1997e(e) does not foreclose plaintiff from seeking mental or emotional injury damages based on his First Amendment claims") (citing *Canell*, 143 F.3d at 1213); *Pogue v. Woodford*, 2009 WL 2777768, at *15 n.13 (E.D. Cal. Aug. 26, 2009) *report and recommendation adopted*, 2009 WL 3211406 (E.D. Cal. Sept. 30, 2009) ("Even though plaintiff has not suffered physical injury, as required by the PLRA for emotional damages claims, the Ninth Circuit does not enforce this aspect of the PLRA for First Amendment purposes.") (citing *Canell*, 143 F.3d at 1213); *Lombardelli v. Halsey*, 2012 WL 2529225, at *9 (E.D. Cal. June 29, 2012) *objections overruled*, 2012 WL 4089944 (E.D. Cal. Sept. 17, 2012) *and report and recommendation adopted in part*, 2013 WL 1278508 (E.D. Cal. Mar. 26, 2013) (noting that "[t]he prior physical injury requirement is not applicable to Plaintiff's other claims for violation of the First Amendment.") (citations omitted).

Because the PLRA does not apply to Plaintiff's First Amendment claims regardless of the relief sought, Plaintiff does not have to show a physical injury resulting from Defendants' unlawful retaliation in order to recover compensatory damages for mental and emotional injuries.

   2.   <u>Plaintiff's time spent in the SHU is a compensable injury under the First and Fourteenth Amendments for which Plaintiff can recover if Defendants fail to meet their burden of proof.</u>

A plaintiff can collect compensatory damages for the unjustified deprivation of a liberty interest stemming from a due process violation, *Carey v. Piphus*, 435 U.S. 247, 263 (1978), and

---

[8] The Supreme Court vacated that decision on different grounds, *Hust v. Phillips*, 555 U.S. 1150 (2009), and on remand, the Ninth Circuit did not address damages. *Phillips v. Hust*, 588 F.3d 652, 657 (9th Cir. 2009) ("Because the qualified immunity issue is straightforward, this is an appropriate case to bypass the more difficult question of whether Hust violated Phillips's constitutional rights.").

the PLRA does not foreclose this remedy, as Defendants implicitly concede. *See* Defs.' Brief, 7:15–18 ("Fourteenth Amendment claims that do not allege physical injury are not barred by § 1997e(e) when the prisoner is seeking compensatory . . . damages not premised on alleged emotional or mental distress.").

Defendants do not contest whether Plaintiff's placement in the SHU deprived him of a liberty interest. Thus, the true point of contention is whether that deprivation was justified, and Defendants cannot escape their burden of proof on this issue simply by pointing to the Court's "some evidence" finding. The "some evidence" test is a "minimally stringent" and "deferential" standard that is met even when the evidence in question does not preclude other conclusions, *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013); *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997), and the Court's "some evidence" ruling certainly does not address whether Plaintiff would have ended up in the SHU without Defendants' due process violations. Indeed, as discussed above, the Court's "some evidence" finding addressed just one of Plaintiff's two due process claims—it has nothing to do with whether Plaintiff was provided a hearing as due process requires. Thus, if Plaintiff prevails on his remaining due process claim, the Court should follow the burden-shifting approach from the Third and Sixth Circuits – an approach that Defendants did not challenge if the Court find its "some evidence" ruling is not dispositive of the justified deprivation issue – to determine whether Plaintiff is entitled to compensatory damages for his time spent in the SHU. *See Reyes* v. *Horel*, 2012 U.S. Dist. LEXIS 101331, *4 (N.D. Cal., July 19, 2012), 5:08-cv-04561 (ECF No. 166).

Further, allowing the "some evidence" ruling to automatically block Plaintiff's recovery of compensatory damages on his remaining due process claim for his time spent in the SHU runs counter to the purpose of compensatory damages or even requiring a hearing in the first place. The purpose of compensatory damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). If Defendants's denial of Plaintiff's hearing resulted in Plaintiff's confinement to the SHU, then Plaintiff should be compensated for that injury. Plaintiff is not arguing that he is entitled to compensatory damages regardless of whether the deprivation was justified; Plaintiff

simply is asserting that if Defendants cannot show Plaintiff would have been placed in the SHU regardless of whether he was afforded a hearing, Plaintiff is entitled to compensatory damages for the deprivation of that liberty interest. *See Reyes*, 2012 U.S. Dist. LEXIS 101331 at *5 ("Simply because defendants *could have* still concluded plaintiff should remain in the SHU does not mean they *would have*."). A contrary finding not only undermines the explicit purpose of compensatory damages, it renders the hearing requirement meaningless. If Plaintiff's right to a hearing and impartial officer cannot potentially affect the disposition of his custody status, then the due process right is no right at all. The better view is that if Plaintiff would not have been confined to the SHU absent Defendants's unconstitutional conduct, Plaintiff can recover compensatory damages for the unjust deprivation of his protected liberty interest.

In addition, as discussed above, Defendants' assertion that the Court's "some evidence" finding bars Plaintiff from recovering damages for the deprivation of his liberty as a result of Defendants' unlawful retaliation simply ignores the Ninth Circuit's conclusion in *Bruce* that the "some evidence" standard does not apply to retaliation claims. Defs.' Brief 9:14-16; *Bruce*, 351 F.3d at 1289. The Ninth Circuit further concluded that a loss of liberty in violation of a Plaintiff's First Amendment rights warrants compensatory damages, *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013), and the burden rests on the defendants to prove they "would have reached the same decision . . . even in the absence of the [plaintiff's] protected conduct." *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1169 (9th Cir. Cal. 2014) (quotations and citations omitted). Thus, if Plaintiff prevails on his First Amendment claims, Defendants bear the burden of proving Plaintiff would have ended up in the SHU regardless of their unlawful retaliation.

Dated: May 13, 2015                                      DLA PIPER LLP (US)


By: /s/ John S. Whittaker
JOHN WHITTAKER
Attorneys for Plaintiff
Reno Fuentes Rios

**Plaintiff's Proposed Jury Instruction Re Plaintiff's Due Process Claim**

Plaintiff claims that Defendants Brandon and Parker violated his rights to due process in violation of the Fourteenth Amendment in connection with Plaintiff's validation as a prison gang associate. Due process requires prison officials to provide Plaintiff with an informal hearing within a reasonable time after the prisoner is segregated; the prisoner must be informed of the reason segregation is being considered; and the prisoner must be allowed to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472, 481 (1995).

If you find that Plaintiff has proven that Brandon, Parker, or both, did not provide Plaintiff with adequate notice and the opportunity to be heard, your verdict should be for Plaintiff. If on the other hand, you find that Plaintiff failed to prove that he did not receive adequate notice and the opportunity to be heard, your verdict should be for Defendants.

**Plaintiff's Proposed Jury Instruction Re Plaintiff's Retaliation Claim**

Plaintiff claims that Defendants Parker and Mayfield each violated his rights under the First Amendment by initiating his validation as a prison-gang associate in response to Plaintiff's participation in a constitutionally protected activity—namely, filing administrative grievances against CDCR officials.

To prevail on his retaliation claims, Plaintiff must satisfy five elements: (1) Plaintiff engaged in protected conduct; (2) Parker and Mayfield took some adverse action against him, (3) the adverse action taken was in response to Plaintiff's protected conduct; (4) the adverse action chilled Plaintiff's exercise of his First Amendment rights, or would chill a person of ordinary firmness from exercising such rights; and (5) the action did not reasonably advance a legitimate correctional goal or, if the action did advance a legitimate correctional goal, it was taken as a cover or ruse to silence or punish Plaintiff because of his protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

A prisoner is subjected to adverse action because of his participation in a protected activity if the adverse action would not have occurred but for that participation. Model Civ. Jury Inst. 9th. 10.3 (2007).

The parties have stipulated that the first element has been satisfied: (1) Plaintiff engaged in protected conduct by filing grievances against CDCR officials. The parties have further stipulated that (2) Parker took an adverse action against Plaintiff by initiating Plaintiff's gang validation. It remains for you to determine whether Plaintiff has satisfied the other elements of his retaliation claims.

If you find that Plaintiff has proven all five of these elements as to either or both Defendants, your verdict should be for the Plaintiff. If, on the other hand, Plaintiff has failed to prove these elements, your verdict should be for Defendants.

**Plaintiff's Proposed Jury Instruction Re Sufficiency of the Evidence Used to Validate Plaintiff**

Plaintiff's only claims in this lawsuit are (1) that Defendants Parker and Brandon failed to provide him with reasonable notice and an opportunity to be heard, and (2) that Defendants Parker and Mayfield initiated his gang validation in retaliation for filing grievances. It is not for you as the jury to decide or consider whether the totality of the evidence used to validate Plaintiff would have been sufficient to validate him.