1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RENO FUENTES RIOS,                      No.  2:07-cv-0790 KJN P

12                  Plaintiff,

13        v.                                 ORDER

14   J.E. TILTON, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner, proceeding through appointed counsel, with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  He proceeds against three defendants (Brandon, Parker, and

19   Mayfield) on claims related to his validation as an associate of a prison gang.  Defendants

20   Brandon and Parker are alleged to have violated plaintiff's procedural due process rights under

21   the Fourteenth Amendment, while defendants Parker and Mayfield are alleged to have retaliated

22   against plaintiff for exercising his First Amendment right to file prison grievances.  The parties

23   have consented to the jurisdiction of the undersigned for all purposes.  See 28 U.S.C. § 636(c);

24   Local Rule 305(a).

25        By prior order, the court directed the parties to file briefs addressing how the trial ought to

26   be structured, what evidence may be presented at trial, and what remedies are potentially

27   available to plaintiff.  These questions are addressed in turn below.

28   ////

                                        1

1    I.    Background

2          A.    Factual Background

3          The following summary of the facts of this case is derived from the undisputed facts set

4    forth in the court's amended pretrial order, dated September 19, 2014.  (ECF No. 171.)

5          At all relevant times, defendant was housed at California State Prison-Sacramento ("CSP-

6    SAC").  All three of the named defendants were employed at CSP-SAC:  Brandon and Parker as

7    Institutional Gang Investigators (Brandon supervised Parker), and defendant Mayfield as a

8    Correctional Counselor.  (Id. at 2.)

9          On June 22, 2004, defendant Mayfield denied plaintiff's classification-related grievance at

10   the first level, following her interview of plaintiff.  Plaintiff's grievance was then denied at the

11   second and third levels, the latter on September 5, 2005, on the grounds that plaintiff's

12   classification was correct.  (Id. at 3)

13         On September 21, 2004, plaintiff filed another inmate grievance (Log No. SAC-C-04-

14   2235), seeking reclassification as a "Mexican National," rather than as a "Border Brother."

15   Plaintiff asserted in his grievance that the latter term was discriminatory, because it inaccurately

16   implied gang affiliation.  (Id. at 2)

17         Plaintiff appealed grievance Log No. SAC-C-04-2235 to the first, second, and third levels

18   of review.  On June 24, 2005, plaintiff's grievance was denied at the third level on the grounds

19   that prison officials had replaced the "Border Brother" designation with "Mexican National."  (Id.

20   at 3.)

21         On December 12, 2005, plaintiff filed another inmate grievance (Log No. SAC-C-06-

22   0599), seeking to reduce his custody status and advance his work status, consistent with the

23   recommendations made by the Board of Prison Terms to advance plaintiff's parole.  In this

24   grievance, plaintiff challenged a December 6, 2005 classification decision in which defendant

25   Mayfield participated.  (Id. at 3.)

26         On June 7, 2006, defendant Parker escorted plaintiff from his cell to an office, where

27   defendant Brandon informed plaintiff that he was being investigated as an associate of the

28   Mexican Mafia (or "EME") prison gang, and was therefore being transferred to the

1  Administrative Segregation Unit ("ASU").  Brandon presented plaintiff with a completed

2  Administrative Segregation Unit Placement Notice on CDC Form 114D, which identified three of

3  five supporting "Confidential Information Disclosure Forms" on CDC Form 1030 ("source

4  items") contained in plaintiff's gang validation package.  Thereafter, plaintiff was transferred to

5  the ASU.  (Id. at 3.)

6          On June 8, 2006, defendant Parker submitted a gang validation package that included five

7  source items.  (Id. at 3.)

8          Plaintiff was subsequently validated by prison authorities as an EME associate.  The date

9  of validation, and the process accorded plaintiff, are disputed.  (Id. at 3.)

10          On June 18, 2006, plaintiff filed an inmate grievance (Log No. SAC-S-06-1422), in which

11  he challenged his preliminary validation as an EME associate.  Informal and first level reviews

12  were bypassed.  The grievance was denied at the second level on September 13, 2006, pursuant to

13  defendant Brandon's interview of plaintiff on August 31, 2006, and a finding that each of the five

14  source items was reliable.  On December 28, 2006, the grievance was denied at the third level

15  review, in concurrence with the decision reached at the second level.  (Id. at 4.)

16          On December 11, 2006, CDCR endorsed plaintiff for indefinite detention in the Security

17  Housing Unit ("SHU") at California State Prison-Corcoran ("CSP-COR").  Plaintiff was confined

18  in the SHU at CSP-COR until January 2014, when he was transferred to Kern Valley State Prison

19  ("KVSP").  At least as of August 2014, plaintiff remained a validated EME associate held in

20  heightened custody at KVSP as part of CDCR's Security Threat Group Program.[1]  (Id. at 4.)

21          Since his validation, Plaintiff has twice been denied parole.  His last denial was in 2009,

22  for a period of ten years.  (Id. at 4.)

23          Plaintiff proceeds to trial against defendants Mayfield and Parker on a claim that these

24  defendants actively sought to validate plaintiff as an EME associate and place him in the SHU in

25  retaliation for plaintiff's exercise of his First Amendment right to file administrative grievances.

26  _____

27  [1] The court is presently unaware of the impact that the settlement recently reached in Ashker v.
Schwarzenegger, No. C 05-03286 CW (N.D. Cal.), may have, if any, on plaintiff's current

28  custody status.

1    Plaintiff proceeds to trial against defendants Brandon and Parker on a claim that these defendants

2    failed to grant plaintiff certain procedural due process rights guaranteed under the Fourteenth

3    Amendment during plaintiff's validation as a gang associate and his placement in the SHU.

4         B. Procedural Background

5         At a pretrial conference held on August 28, 2014, the parties agreed that the court would

6    conduct an in camera review of the confidential information relied upon to validate plaintiff as a

7    gang associate to determine whether plaintiff's validation met federal due process standards.  (See

8    ECF No. 167; see also ECF No. 171 at 5-6.)  To that end, the parties submitted a stipulated

9    protective order, which the court signed on September 16, 2014.  (ECF No. 168.)  Thereafter,

10   defendants submitted under seal all five confidential source items contained in plaintiff's gang

11   validation package, together with supporting confidential information.  The parties complied with

12   an initial briefing schedule, with final briefing submitted on November 26, 2014.  (See ECF Nos.

13   171-82.)

14        By sealed order dated December 22, 2014, the court determined that, although plaintiff's

15   validation as an associate of the EME prison gang was not supported by all of the confidential

16   information relied upon by prison authorities, sufficient reliable evidence was present to meet the

17   "some evidence" standard established by the Ninth Circuit in considering whether due process

18   has been satisfied in gang validation proceedings.[2]  Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003).

19   Once the court determined that plaintiff's validation met federal due process standards, plaintiff's

20

21   _____

     [2] Decisions by other courts offer conflicting views on whether questions concerning the
     sufficiency of the evidence used to validate an inmate as a prison gang sounds in substantive due

22   process or procedural due process.  However, the Ninth Circuit, in its most recent pronouncement
     on the issue, characterizes the issue as sounding in procedural due process.  See Castro v.

23   Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013) ("[T]he 'some evidence' requirement is an
     'evidentiary standard.'  As such, procedural, not substantive, due process guarantees inmates that

24   their validation will be based on some evidence.") (internal citation omitted).  Several prior orders
     in this case described plaintiff's claim as sounding in substantive due process.  In order to

25   maintain consistency with Castro while avoiding confusion with plaintiff's surviving procedural
     due process claim, the court herein refers to the sufficiency of the gang validation evidence as a

26   "due process" or "federal due process" matter, in keeping with prior Ninth Circuit opinions such
     as Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003) ("Given that some evidence supported the

27   validation decision, the district court properly entered summary judgment in favor of defendant
     prison officials on Bruce's due process claim.").

28

                                                    4

1   due process claim against defendants Brandon and Parker was dismissed.  (ECF No. 184.)

2          The court subsequently held a pretrial conference at which the counsel for the parties

3   appeared.  Afterwards, the court issued an order directing the parties to brief the questions

4   addressed below.

5   II.  Analysis

6          A.  At trial, should the jury be instructed regarding the court's finding that

7              plaintiff's validation as a gang associate satisfied the "some evidence" standard?

8          The parties were asked to brief the following question:

9              • Should the jury be instructed regarding the court's finding that plaintiff's

10                 validation as a gang associate satisfied the "some evidence" standard, and if so,

11                 why?

12         Unsurprisingly, the parties have opposing views on this question.

13         Before turning to the parties' responses, the court notes that plaintiff has devoted a

14  significant portion of his briefing to a related issue:  whether the jury may be instructed regarding

15  the CSP-SAC Institutional Classification Committee's determination, in 2006,[3] that plaintiff's

16  validation as a gang associate was warranted.  Given the likely importance of that issue to the

17  parties' trial preparation, the court considers it herein, rather than defer a decision to motions in

18  limine on the eve of trial.[4]

19         For the purposes of this order, the court deems it appropriate to characterize the "some

20  evidence" finding as equivalent to a grant of partial summary judgment to defendants.  In fact,

21  defendants previously moved for summary judgment on the issue of whether plaintiff's validation

22

23  [3] Although the parties agree that plaintiff's initial validation and related placement in the ASU
    took place on June 7 and 8, 2006, the date of plaintiff's final validation remains a disputed factual
24  issue.  (See ECF No. 171 at 5.)

25  [4] In order to simplify the discussion that follows, the court uses the term "validation
    determination" to refer to the CSP-SAC Institutional Classification Committee's determination, in
26  2006, that plaintiff's validation as a prison gang associate was warranted, and the term "'some
    evidence' finding" to refer to the court's December 22, 2014 finding that the source items relied
27  upon by defendants to validate plaintiff as a prison gang associate met the "some evidence"
    standard and therefore satisfied federal due process requirements.
28

5

satisfied substantive due process standards.  (See Defendants' Motion for Summary Judgment, ECF No. 134-2 at 13.)  The court denied that motion, on the grounds that defendants failed "to demonstrate the reliability of the confidential information underlying any of the five source items used to validate plaintiff."  (Order, ECF No. 141 at 27.)  In so concluding, the court noted that "no underlying debriefing reports or confidential memoranda [had] been provided to the court for in camera review."  (Id. at 26.)  As discussed above, the court subsequently permitted defendants to submit confidential information regarding plaintiff's validation for in camera review, and concluded on this basis that the "some evidence" standard was met.  If defendants, in conjunction with their summary judgment motion, had submitted the underlying materials supporting plaintiff's validation for in camera review, there appears no reason why defendants would not have obtained partial summary judgment on the issue of whether due process standards had been met.  The court therefore treats the "some evidence" finding as equivalent to a grant of partial summary judgment in defendants' favor on the due process claim.

Though the question does not arise frequently, several district courts in the Ninth Circuit have grappled with whether to permit a jury to be informed about a prior entry of partial summary judgment.

A common thread in many of the pertinent orders is the choice to view the issue through the lenses of Federal Rules of Evidence 401-403.  See Via Waves Comms., LLC v. ARC Phone Canada, Inc., No. CV–01–10370 CAS (MANx), 2004 WL 5486633 (C.D. Cal. Oct. 19, 2004) (discussing parties' Fed. R. Evid. 403-based arguments before denying plaintiff's motion in limine, thereby "permit[ting] defendants to rely on the Court's August 9, 2004, motion for summary judgment to the extent that the motion consists of the Court's conclusive findings of fact and conclusions of law"); Burdett v. Reynoso, No. C-06-00720 JCS, 2007 WL 4554034 at *2 (N.D. Cal. Nov. 20. 2007) (applying Fed. R. Evid. 403 to "prohibit[] all reference to the Court's summary judgment ruling," while noting that "if any side opens the door and offers evidence that contradicts the Court's probable cause findings [at summary judgment], then the Court will consider instructing the jury on [those] findings." ); Oyarzo v. Tuolomne Fire Dist., No. 1:11–cv–01271–SAB, 2013 WL 5718882 (E.D. Cal. Oct. 18, 2013) at *8-9 (granting plaintiff's motion in

limine because "[t]he fact that Defendants['] motion for summary judgment has been granted in respect to certain claim[s] or defendants is irrelevant and the admission of such evidence is highly prejudicial.")  A related issue was raised in SEC v. Retail Pro, Inc., No. 08–CV–1620–WQH– RBB, 2011 WL 589828 at *4 (S.D. Cal. Feb.10, 2011), where the plaintiff moved in limine, under Federal Rule of Civil Procedure 56(g),[5] for an order "specifying that certain facts [decided by the Court in the summary judgment Order] are not genuinely at issue and must be treated as established in this action" and an order "excluding as irrelevant any evidence or testimony contradicting these facts."  Id. at *2 (bracketed phrase in original).  The court denied the motion, applying Federal Rule of Evidence 403 to find "significantly greater potential [than in other Rule 56(g) cases considered by the court] for jury confusion and unfair prejudice to Defendant" if the court were to treat the facts established at summary judgment as established in the jury trial.

In light of these precedents, and absent guidance from higher courts regarding how to otherwise address the issue, the court considers the admissibility at trial of the "some evidence" finding in light of Federal Rules of Evidence 401–403.

The first question is whether the "some evidence" finding is relevant, that is, whether it (a) "has any tendency to make a fact more or less probable than it would be without the evidence," and (b) "is of consequence in determining the action."  Fed. R. Evid. 401.  In order to answer this question, the court must examine the elements of the two remaining causes of action in this case.

          1.  Is the "some evidence" finding relevant to plaintiff's procedural due process claim?

Plaintiff claims that defendants Brandon and Parker failed to safeguard his procedural due

---

[5] Rule 56(g) provides:  "If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."  The Advisory Committee Comments to the 2010 amendments to Rule 56(g) provide: "Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established.  The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."

1   process rights under the Fourteenth Amendment during the gang validation proceedings.  The

2   Ninth Circuit has identified the following set of requirements that prison officials must follow

3   before making a security placement of an inmate in connection with gang validation:

> [W]hen prison officials initially determine whether a prisoner is to
> be segregated for administrative reasons[,] due process only
> requires the following procedures: Prison officials must hold an
> informal nonadversary hearing within a reasonable time after the
> prisoner is segregated.  The prison officials must inform the
> prisoner of the charges against the prisoner or their reasons for
> considering segregation.  Prison officials must allow the prisoner to
> present his views.

9   Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986) (footnote omitted), abrogated in part

10  on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  Due process "does not require

11  detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity

12  to present witnesses, or a written decision describing the reasons for placing the prisoner in

13  administrative segregation."  Toussaint, 801 F.2d at 1100-01.

14          The fact that the court found that "some evidence" justified plaintiff's validation as a gang

15  associate does not appear to make it more or less probable that plaintiff was (i) afforded a timely

16  hearing, (ii) informed of the charges against him and/or the reasons he was being considered for a

17  security placement, and (iii) afforded an opportunity to present his views, all as required to

18  guarantee adequate procedural due process.  The "some evidence" finding, then, appears

19  irrelevant to plaintiff's procedural due process claim.[6]

20          Defendants disagree, arguing as follows:

> Concerning the due-process claim, the Court should instruct the
> jury that the Court has adjudicated one of the elements of this claim
> – whether "some evidence" supported Plaintiff's validation as a
> prison-gang associate – and found that four of the five source items
> each met the "some evidence" standard.

24  (Defendants' Brief, ECF No. 197 at 2.)  Defendants fail to provide any authority for the assertion

25  that the "some evidence" standard for gang validation comprises an element of a procedural due

26  process claim as set forth in Toussaint.  Research has also failed to uncover any authority for such

27

28
_____

[6] Although, as discussed below, if defendants are held liable, the finding may be relevant to the
determination of remedies.

8

1   a proposition.  Accordingly, defendants' argument is unavailing.[7]

2          The court therefore holds that its finding that "some evidence" supported plaintiff's

3   validation as a prison gang associate is irrelevant to plaintiff's procedural due process claim, and

4   is therefore inadmissible by defendants for the purpose of opposing this claim.  "Irrelevant

5   evidence is not admissible."  Fed. R. Evid. 402.  As discussed below, evidence of the 2006

6   validation determination is similarly irrelevant to the elements of plaintiff's procedural due

7   process claim, and will be excluded in connection with that claim as well.

8                  2.  Is the "some evidence" finding relevant to plaintiff's retaliation claim?

9          The court next turns to the question of whether the "some evidence" finding is relevant to

10  plaintiff's claim that defendants Parker and Mayfield retaliated against him for exercising his

11  First Amendment right to file prison grievances.

12         According to the Ninth Circuit, a prisoner who alleges that he was subjected to retaliation

13  for exercising his First Amendment rights must prove the following five elements:  "(1) An

14  assertion that a state actor took some adverse action against an inmate (2) because of (3) that

15  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

16  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

17  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004); accord Watison v. Carter, 668 F.3d

18  1108, 1114-15 (9th Cir. 2012) (elaborating on the elements above).  In order to satisfy the

19  causation element, the plaintiff must show that the constitutionally protected conduct was a

20  "substantial" or "motivating" factor for the alleged retaliatory action.  Brodheim v. Cry, 584 F.3d

21

22  [7] Similarly, defendants' proposed jury instructions identify the fact that "the gang-validation
    must be supported by some evidence" as an element of plaintiff's procedural due process claim.
23  (See Defendants' Brief, ECF No. 197 at 12.)  Defendants are incorrect.  The two due process
    claims are discrete and provide independent bases for liability, as is made clear in numerous
24  Ninth Circuit cases that consider as separate issues whether, in connection with a gang validation,
    (i) an inmate was provided adequate notice and an opportunity to be heard,  and (ii) there was
25  "some evidence" to support the validation.  See, e.g., Toussaint, 926 F.2d at 800; Bruce, 351
    F.3d at 1287; Castro, 712 F.3d at 1304.  While the court will not determine the form of jury
26  instructions in this order, defendants are cautioned not to submit future proposed jury instructions
    which attempt to merge the "some evidence" standard with plaintiff's surviving procedural due
27  process claims.

28

1   1262, 1271 (9th Cir. 2009).[8]  In order to demonstrate that the alleged adverse action did not

2   advance a legitimate correctional goal, a plaintiff must show "that the defendant's actions were

3   arbitrary and capricious or that they were unnecessary to the maintenance of order in the

4   institution."  Watison, 668 F.3d at 1114-15 (internal quotations and citations omitted).

5        For purposes of this order, the primary issue appears to be whether the court's

6   determination that "some evidence" supported plaintiff's validation as a gang associate is relevant

7   to the fifth element of a retaliation claim:  that "the action did not reasonably advance a legitimate

8   correctional goal."[9]  Rhodes, 408 F.3d at 567-68.

9        In order to decide this issue, the court must balance two competing considerations.  On the

10  one hand, the requirements of Federal Rule of Evidence 401 are not especially stringent.  See

11  Slaughter-Payne v. Shinseki, 522 Fed. Appx. 409, 410 (9th Cir. 2013) (noting the "low bar for

12  relevancy under Federal Rule of Evidence 401."); Aranda v. City of McMinnville, 942 F. Supp.

13  2d 1096, 1102 (D. Or. 2013) (referencing "the low threshold for relevancy under Rule 401");

14  Jones v. Ford Motor Co., 204 Fed. Appx. 280, 283 (4th Cir. 2006) ("Relevance is typically a low

15  bar to the admissibility of evidence, even though other Federal Rules of Evidence may otherwise

16  limit such admissibility."); United States v. Miranda-Uriarte, 649 F.2d 1345, 1354 (9th Cir. 1981)

17  ("The standard of relevance is not strict.").  Defendants implicitly rely on this point in quoting

18  Federal Rule of Evidence 401 in support of their argument that the "some evidence" finding

19  ought to be admissible.  (ECF No. 197 at 3.)

20       On the other hand, the Ninth Circuit has held that "the 'some evidence' standard . . .

21  [does] not apply to retaliation claims."  Bruce, 351 F.3d at 1289 (citing Hines v. Gomez, 108 F.3d

22  265, 269 (9th Cir. 1997)).  In Bruce, the named plaintiff appealed the district court's grant of

23  summary judgment to defendant prison officials on claims arising from his validation as a prison

24

25  [8] This standard appears unchanged by recent United States Supreme Court decisions applying a
    "but-for" causation standard in retaliation cases brought under Title VII of the Civil Rights Act of
26  1964, Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013), and the Age
    Discrimination in Employment Act, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

27
    [9] It is difficult to discern how the "some evidence" finding might be relevant to the other four
28  elements of the claim.

gang member.  On appeal, the Ninth Circuit affirmed entry of summary judgment in the

defendants' favor on plaintiff's due process claim, finding that "any of the[] three pieces of

evidence [used to validate Bruce as a prison gang member] would have sufficed to support the

validation because each has sufficient indicia of reliability." Id. at 1288.  However, the panel

went on to write:

> The "some evidence" standard applies only to due process claims
> attacking the result of a disciplinary board's proceeding, not the
> correctional officer's retaliatory accusation.  It is clear, and Bruce
> concedes, that prisons have a legitimate penological interest in
> stopping prison gang activity.  But, if, in fact, the defendants abused
> the gang validation procedure as a cover or a ruse to silence and
> punish Bruce because he filed grievances, they cannot assert that
> Bruce's validation served a valid penological purpose, even though
> he may have *arguably* ended up where he belonged.

Id. at 1289 (emphasis in original) (internal citations omitted).

There lies an apparent discrepancy between the relatively low standard for admissibility

under Rule 401 and the Ninth Circuit's ruling that – at least for the purposes of summary

judgment – a finding that the "some evidence" standard has been met may not be used to

demonstrate that defendants were attempting to "reasonably advance a legitimate correctional

goal." Rhodes, 408 F.3d at 567-68.

The court previously entered an order providing that "defendants may not seek to

introduce either (i) the evidence used to validate plaintiff as a gang associate, or (ii) the court's

finding that plaintiff was validated on the basis of 'some evidence' in order to argue that the

validation served a 'legitimate penological purpose,' and therefore, that they are exempt from

liability for retaliation."  (ECF No. 189 at 2 n.2) (citing Bruce, 351 F.3d at 1289).  Defendants

filed objections to this order (ECF No. 190), which resulted in the court issuing an order of

clarification providing that "defendants are only precluded from arguing that the existence of a

legitimate penological purpose for the validation exempts them, as a matter of law, from liability

for retaliation."  (ECF No. 192.)  While the court invited the parties to explore "other legitimate

purposes for introducing this information" (ECF No. 189 at 2 n.2), defendants have failed to do

so.  Instead, defendants write that "[t]he fact that some evidence supported Plaintiff's gang

validation is relevant not merely to show that Plaintiff's gang validation served a legitimate

11

1    penological purpose [i.e., exactly the line of argument that the court previously disallowed], it is

2    relevant to show that Plaintiff's validation was not a ruse or cover to punish him for filing

3    grievances."  (Defendants' Brief, ECF No. 197 at 3.)

4           The problem with defendants' argument is that it ignores the statement in <u>Bruce</u>:

5    "[Defendants] s cannot assert that Bruce's validation served a valid penological purpose, even

6    though he may have *arguably* ended up where he belonged…if, in fact, the defendants abused the

7    gang validation procedure as a cover or a ruse to silence and punish Bruce because he filed

8    grievances…" 351 F.3d at 1289 (emphasis in original).  Thus, proving that a federal court

9    ultimately determined that there was "some evidence" to support plaintiff's gang validation is not

10   relevant to the issue of whether defendants "abused the gang validation procedure as a cover or a

11   ruse to silence and punish [plaintiff] because he filed grievances."  In fact, the passage quoted

12   above in <u>Bruce</u> is now cited by the Ninth Circuit for the proposition that summary judgment

13   cannot be granted on a claim that gang validation was undertaken for retaliatory purposes even if

14   there was "some evidence" for the validation.  <u>See, e.g.</u>, <u>Cortez v. Cate</u>, 499 Fed. Appx. 658, 660

15   (9th Cir. 2012) ("[T]he district court erred in granting summary judgment on Cortez's First

16   Amendment retaliation claim when it improperly concluded that Cortez could not refute that

17   defendants had legitimate correctional goals for his gang validation.  Cortez provided evidence to

18   create a genuine dispute of material fact as to improper motive.")  To summarize, in their

19   briefing, defendants have failed to present any basis for submitting the "some evidence" finding

20   to the jury beyond those reasons already disallowed by the court.

21          For these reasons, the court will not allow the jury – in determining whether defendants

22   Parker and Mayfield retaliated against plaintiff – to be instructed regarding the "some evidence"

23   finding.  Accordingly, neither party will be permitted to refer to the fact of this finding during the

24   liability phase of the trial herein.[10]

25   ////

26

27   _____
     [10] As discussed below, the court is of the view that bifurcation of trial into a liability phase and a
     remedies phase is warranted, and it may be that introduction of the "some evidence" finding
28   proves appropriate during a remedies phase, if any.

1          3.   Should the committee's validation determination be deemed admissible in connection

2               with plaintiff's retaliation claim?

3          However, having reached the conclusion above, the court will permit defendants to

4   introduce into evidence the fact that prison officials validated plaintiff as a gang associate in

5   2006, as the reasons for excluding the court's "some evidence" finding simply do not apply to the

6   fact of the validation determination.

7          Plaintiff objects that his retaliation claim rests on the respective motivations of defendants

8   Parker and Mayfield at the point in time at which they decided to validate plaintiff as a prison

9   gang associate, not on whether there was a subsequent finding that sufficient evidence existed to

10  justify the validation.  (Plaintiff's Brief, ECF No. 195 at 6.)  Plaintiff writes, "A committee's

11  decision, either approving or rejecting evidence submitted by an [institutional gang investigator],

12  would be not relevant in determining the IGI's motivation at the time of validation."  (Id.)

13  Plaintiff adds that "because a retaliation claim can stand even where the validation itself was

14  based on reliable information, as in Bruce, it follows that evidence supporting the reliability of

15  that information – such as the committee's approval of the same – is not relevant to any piece of

16  the retaliation claim."  (Id.)

17         Plaintiff's objection is unavailing.  The fact of the validation determination is relevant to

18  an element of plaintiff's claim.  Specifically, that fact has a "tendency to make [it] . . . less

19  probable," Fed. R. Evid. 401(a), that plaintiff's validation "did not reasonably advance a

20  legitimate correctional goal," Rhodes, 408 F.3d at 567-68.  Bruce, which plaintiff cites, makes

21  clear "that prisons have a legitimate penological interest in stopping prison gang activity," 351

22  F.3d at 1289, i.e., that stopping prison gang activity is a "legitimate correctional goal."  As for the

23  passage in Bruce cited by plaintiff – that prison officials "cannot assert that [a prisoner's]

24  validation served a valid penological purpose, even though he may have *arguably* ended up where

25  he belonged," id. at 1289 (emphasis in original) – the court is wary of giving it an overly broad

26  reading.  Bruce clearly precludes a validation determination from being used to defeat a

27  retaliation claim as a matter of law.  Nevertheless, the fact that an inmate was properly validated

28  as a gang member or associate, and that prison officials acted out of an (unconstitutional)

13

1   retaliatory motive to validate him are not mutually exclusive determinations; prison officials may

2   be held liable for retaliation even if an inmate is properly validated a gang member or associate.

3   It is for this reason that, the court, in its February 26, 2015 order of clarification, wrote that

4   "defendants are only precluded from arguing that the existence of a legitimate penological

5   purpose for the validation exempts them, as a matter of law, from liability for retaliation," (ECF

6   No. 192).  By contrast, neither <u>Bruce</u> nor the court's prior orders appear to preclude defendants

7   from arguing, as a factual matter at trial, that they had a legitimate penological purpose for

8   validating plaintiff as a gang associate and pointing to the validation determination as evidence of

9   the legitimacy of this purpose.  Put simply, the validation determination arguably makes it less

10  probable as a factual matter that defendants Parker and Mayfield had a retaliatory motive for

11  validating plaintiff as a prison gang associate.

12          Plaintiff goes on to argue that even if evidence regarding the validation determination is

13  deemed relevant under Federal Rule of Evidence 401, it ought to be excluded under Rule 403 as

14  unfairly prejudicial, because it would confuse the issues, and/or because it would mislead the

15  jury.  (Plaintiff's Brief, ECF No. 195 at 7-8.)

16          District courts are given "wide latitude when they balance the prejudicial effect of

17  proffered evidence against its probative value . . . ."  <u>United States v. Spencer</u>, 1 F.3d 742, 744

18  (9th Cir. 1992) (internal quotation omitted).  Such a weighing should be made with an

19  appreciation of the offering party's need for "evidentiary richness and narrative integrity in

20  presenting a case . . . ."  <u>Old Chief v. United States</u>, 519 U.S. 172, 182-83 (9th Cir. 1997).  The

21  fact that the evidence "was prejudicial to one party is insufficient to establish that the prejudice

22  was unfair, or that the trial court [has] abused its discretion in weighing that prejudice against the

23  evidence's probative value."  <u>Boyd v. City and Cnty. of San Francisco</u>, 576 F.3d 938, 948 (9th

24  Cir. 2009).  Instead, the inquiry rests on whether the probative value of relevant evidence is

25  "substantially outweighed" by the risk of, inter alia, unfair prejudice, confusing the issues, or

26  misleading the jury.  Fed. R. Evid. 403.

27          Plaintiff writes:

28                  If the committee's finding is allowed to come in . . . then the jury is

14

1

2

3

4

> likely to improperly conclude that the committee's finding
> establishes that Defendants did not retaliate against Plaintiff.  The
> jury may similarly conclude that it does not matter if Defendants
> retaliated against Plaintiff . . . because he ended up where he
> belonged.  [. . .]  [T]he committee's determination that the evidence
> supported validation is irrelevant to Defendants' motivation in
> validating Plaintiff . . . .

5

6  (ECF No. 195 at 8.)

7      Plaintiff here fails to present an argument, and instead merely speculates, as to the effect

8  that learning of the validation determination may have on the jury.  It may be that the validation

9  determination will weigh against plaintiff in jurors' minds, though the court is not convinced on

10  this point.  For example, plaintiff may be able to show that defendants Parker and Mayfield

11  previously had in hand the information required to validate plaintiff, but simply chose not to

12  employ it until such time as they developed a retaliatory motive.

13      The inquiry is whether any resulting prejudice will be unfair to plaintiff, and if so, whether

14  that prejudice substantially outweighs the evidence's probative value.  The court does not believe

15  that it would be unfairly prejudicial to plaintiff for the jury to be informed of the validation

16  determination.   That determination is material to whether Parker and Mayfield had grounds to

17  identify plaintiff as a prison gang associate.  Plaintiff makes much of the fact that the retaliation

18  inquiry must focus on defendants' "motivation for validating Plaintiff."  (ECF No. 195 at 7.)  But

19  this line of argument ignores the fact that Parker and Mayfield, in seeking to validate plaintiff,

20  had to know that their evidence would be reviewed by a third party.  "The verification of an

21  inmate/parolee's gang identification shall be validated or rejected by the chief, office of

22  correctional safety (OCS), or a designee."  Cal. Code Regs. tit. 15, § 3378(c)(6) (2006).  If the

23  ICC had reached a contrary validation determination, and had overruled Parker and Mayfield,

24  plaintiff would certainly be seeking to introduce this fact at trial as dispositive of the no

25  "legitimate correctional goal" element.

26      Finally, there is plaintiff's argument that "[t]he jury may . . . conclude that it does not

27  matter if Defendants retaliated against Plaintiff . . . because he ended up where he belonged"

28  (ECF No. 195 at 8) if the validation determination is introduced.  The court is of the view that any

15

1   such confusion of the issues or jury misdirection can be cured by issuing a limiting instruction,

2   pursuant to Federal Rule of Evidence 105, that the validation determination is not dispositive of

3   the issue of whether plaintiff's validation served a "legitimate correctional goal," and that, in fact,

4   defendants can be held liable for retaliation even if plaintiff was properly validated as a gang

5   member. C.f., United States v. McNeil, 141 Fed. Appx. 552, 553 (9th Cir. Jul. 22, 2005) ("The

6   district court's limiting instruction reduced any concern that the probative value of the evidence

7   was 'substantially outweighed by the danger of unfair prejudice' or confusion."); United States v.

8   Lefevbre, 29 F.3d 636 at *2 (9th Cir. 1994) ("[T]he district court's limiting instruction diminished

9   any danger that the chart prejudiced or misled the jury"); United States v. O'Brien, 601 F.2d

10  1067, 1070 (9th Cir. 1979) ("Limiting instructions may reduce or eliminate prejudice which

11  would otherwise occur."). The parties are invited to submit language for an appropriate limiting

12  instruction at such time as jury instructions are being developed.[11]

13         Defendants will therefore be permitted to present evidence of the 2006 validation

14  determination in opposing plaintiff's retaliation claim, subject to an appropriate limiting

15  instruction.

16         B.   How should any confidential information be handled at trial?

17         The court asked the parties to brief the following question:

18              •   What confidential material currently filed under seal with the court does

19                  plaintiff seek to introduce at trial, for what purpose, and with what proposed

20                  redactions, if any?  If plaintiff is permitted to introduce some or all of this

21                  material at trial, what documents, other evidence, or limiting instructions

22                  would defendants seek to introduce in response, and why?  How would trial

23                  bifurcation change the parties' views on this subject, if at all?

24         Plaintiff wishes to introduce redacted versions of two memos, one, dated March 25, 2003,

25  prepared by a Sergeant J. Bales ("Bales Memo"), and another, dated July 1, 2006, prepared by

26

27  _____

    [11] Such instructions should also include directing the jury not to consider, as part of its
    deliberations, whether the plaintiff ended up where he belonged, for the issue of whether plaintiff
28  was properly validated is one for the court to decide.

defendant Parker ("Parker Memo"), currently filed under seal with the court.  Plaintiff contends

that these memos must be presented to the jury because defendant Parker references them in

CDCR chronos that he prepared in support of plaintiff's validation as a gang associate.

(Plaintiff's Brief, ECF No. 195 at 3.)  According to plaintiff, the chronos themselves do not make

clear defendant Parker's alleged failures to comply with CDCR regulations and procedures;

rather, the alleged failures are only evident if one examines the underlying memos.  Plaintiff

argues that the two documents are relevant to plaintiff's retaliation claim against defendant Parker

because they help demonstrate "that Parker was willing to violate regulations and procedures in

order [to] ensure that Plaintiff was validated," and are therefore "probative of [Parker's]

retaliatory motive in validating Plaintiff as a gang associate."  (Id.)  Plaintiff additionally argues

that defendants will not be unduly prejudiced by the introduction of the two memos, writing:

> Defendants may be able to provide non-retaliatory explanations for
> Parker's failure to comply with regulations, challenge Plaintiff's
> contentions that he did not comply with regulations, or argue that
> Parker considered three other pieces of evidence described on form
> 128-B and Plaintiff is only challenging his compliance with
> regulations with respect to two of them.

(ECF No. 195 at 3.)

        The Bales Memo is described in the pertinent form CDC 128-B chrono as "a Debriefing

report dated March 25, 2003, authored by Sergeant J. Bales identifying [plaintiff] selling drugs

under the authority of inmate Vivar, Felipe . . . a validated EME associated."  (Plaintiff's Brief,

ECF No. 195 at 4.)  Plaintiff proposes to redact the content of the entire Bales Memo, except for

the year of the alleged gang activity described therein.  (Id. at 5.)  It is plaintiff's contention that

the date falls outside the time period necessary qualify as "current gang activity" under applicable

CDCR regulations at the time defendant Parker initiated gang validation proceedings against

Plaintiff.

        In response, defendants propose, as an alternative to introducing the Bales Memo, that the

parties stipulate to the date in question and that the jury be informed of the stipulated fact.

(Defendants' Brief, ECF No. 197 at 6.)  As plaintiff is amenable to this stipulation (Plaintiff's

Reply, ECF No. 199 at 1 n.2), the court agrees to this compromise.

17

1      As for the Parker Memo, it is characterized in the pertinent CDC 128-B chrono as having

2  "identified [plaintiff's] name on a list of active EME associates functioning under the gangs

3  policies, procedures, and guidelines to benefit the gang." (sic) (Plaintiff's Brief, ECF No. 195 at

4  3.)  The list in question is described in the chrono as having been "authored by inmate

5  MARTINEZ, Ray . . ., a validated EME associate and the intended recipient was inmate

6  PADILLA, Jacques . . ., a validated EME member housed at Corcoran State Prison (COR)."  (Id.)

7  Plaintiff wishes to introduce a redacted version of the Parker Memo in order to demonstrate that

8  defendant Parker failed to include therewith any supporting documentation showing that

9  Plaintiff's name was in fact on a list of active EME associates.  Plaintiff contends that this

10 omission violated applicable CDCR regulations and thereby "suggests that [defendant Parker's]

11 motive in pursuing Plaintiff's gang validation was not to serve a valid penological purpose, but to

12 punish Plaintiff for filing grievances."  (Id. at 4.)  Plaintiff also contends that the Parker Memo is

13 relevant because defendant Parker is its author.  (Plaintiff's Reply, ECF No. 199 at 7.)

14     Defendants consent to the introduction of the Parker Memo, provided that the exhibits

15 attached to the memo also be admitted for completeness, Fed. R. Evid. 106, and that the memo

16 and the exhibits be published for the jury's eyes only.  (Defendant's Brief, ECF No. 197 at 6.)

17 However, their consent is premised on the court allowing the "some evidence" finding to be

18 presented to the jury.  (Id.)  As discussed above, the court will bar that finding from being

19 presented to the jury as irrelevant to plaintiff's procedural due process claim, and prejudicial (and

20 arguably irrelevant) to plaintiff's retaliation claim.  However, as discussed above, the court will

21 allow the CSP-SAC Institutional Classification Committee's validation determination to be

22 introduced to the jury in connection with plaintiff's retaliation claim.  Therefore, the court will

23 allow the Parker Memo to be presented to the jury; defendants may introduce the exhibits

24 attached to the Parker Memo for completeness; both the Parker Memo and any exhibits thereto

25 will be published for the jury's eyes only.

26 ////

27 ////

28 ////

18

C.  <u>What remedies may plaintiff appropriately seek in connection with his claims?</u>[12]

The court asked the parties to brief the following questions:

- If the jury finds for the plaintiff on his procedural due process claim, what are appropriate remedies: a new validation hearing, nominal damages, compensatory damages, and/or some form of injunctive relief?

- If the jury finds for the plaintiff on his retaliation claim, what are appropriate remedies: a new validation hearing, nominal damages, compensatory damages, and/or some form of injunctive relief?

The parties largely agree on the remedies potentially available to plaintiff, with two exceptions.

First, defendants claim that, absent a showing of physical injury, the Prison Litigation Reform Act precludes plaintiff from obtaining compensatory damages for mental and emotional injuries resulting from defendants' alleged retaliation.  Second, defendants dispute whether plaintiff may seek damages for time that he spent in the SHU as a result of alleged retaliation and/or procedural due process violations; defendants contend, based on the court's "some evidence" finding, that no such damages are available to plaintiff.  These two points of disagreement are addressed below.

1.  <u>May plaintiff seek compensatory damages for mental and emotional injuries resulting from defendants' alleged retaliation?</u>

Plaintiff claims that he may recover damages for mental and emotional injuries stemming from defendants' alleged retaliation, even in the absence of a showing of physical injury. (Plaintiff's Brief, ECF No. 195 at 11-12, 14.)

Defendants disagree, citing 42 U.S.C. § 1997e(e), enacted as part of the Prison Litigation Reform Act of 1996: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  <u>Id.</u>

---

[12] As discussed below, the court intends to bifurcate liability and damages.

19

1    Plaintiff argues that the Ninth Circuit recognizes an exception to § 1997e(e) for claims

2  based on the First Amendment.  In support, he cites Canell v. Lightner, 143 F.3d 1210 (9th Cir.

3  1998), for the proposition that "§ 1997e(e) does not apply to First Amendment Claims regardless

4  of the form of relief sought."  Id. at 1213.  (See Plaintiff's Brief, ECF No. 195 at 11.)

5    Defendant counters that plaintiff misreads Canell, writing:

6         The plaintiff in Canell did not even assert a claim for damages
          resulting from emotional or mental harm.   143 F.3d at 1213.
7         Rather, the defendants argued on appeal that § 1997e(e) barred the
          plaintiff's action "because he [was] alleging only 'mental or
8         emotional injury' without the requisite physical injury."  Id.  The
          court rejected the defendants' argument after concluding that "[t]he
9         deprivation of First Amendment rights entitles a plaintiff to judicial
          relief wholly aside from any physical injury he can show, or any
10        mental or emotional injury he may have incurred."  Id. (emphasis
          added).
11

12  (Defendants' Brief, ECF No. 197 at 8.)

13    In reply, plaintiff claims that his reading of Canell is supported by numerous subsequent

14  decisions.  (Plaintiff's Reply, ECF No. 199 at 9.)

15    Plaintiff appears to have the better of this argument.

16    Canell, 143 F.3d at 1210, concerned a pretrial detainee who sued various officials under

17  42 U.S.C. § 1983, alleging that a correctional officer had proselytized him, thereby violating the

18  Establishment and Free Exercise Clauses of the First Amendment.  While the Ninth Circuit

19  ultimately upheld the district court's grant of summary judgment to the defendants, it reversed the

20  district court on the issue of whether 42 U.S.C. § 1997e(e) barred the plaintiff's claim as a matter

21  of law, writing:

22        The appellees in this case argue that this provision bars Canell's
          action because he is alleging only "mental or emotional injury"
23        without the requisite physical injury. We disagree. Canell is not
          asserting a claim for "mental or emotional injury." He is asserting a
24        claim for a violation of his First Amendment rights. The
          deprivation of First Amendment rights entitles a plaintiff to judicial
25        relief wholly aside from any physical injury he can show, or any
          mental or emotional injury he may have incurred. Therefore,
26        § 1997e(e) does not apply to First Amendment Claims regardless of
          the form of relief sought.
27

28  Id. at 1213.

20

1    Subsequent district court orders have differed in the interpretation that they give the

2    passage quoted above from Cannell, 143 F.3d at 1213.  Plaintiff cites a number of orders issued

3    by judges in the Eastern District of California[13] holding that prisoners who prevail on First

4    Amendment claims may, despite the text of 42 U.S.C. § 1997e(e), seek damages for emotional

5    and mental distress even in the absence of physical injury:

6    > See Mitchell v. Adams, [No. CIV S–06–2321 GEB GGH P,] 2010
     > WL 2976073, at *31 (E.D. Cal. July 27, 2010)[,] report and
7    > recommendation adopted, 2010 WL 3397391 (E.D. Cal. Aug. 27,
     > 2010) ("Section 1997e(e) does not foreclose plaintiff from seeking
8    > mental or emotional injury damages based on his First Amendment
     > claims") (citing Canell, 143 F.3d at 1213); Pogue v. Woodford, No.
9    > CIV S–05–1873 MCE GGH P, 2009 WL 2777768, at *15 n.13
     > (E.D. Cal. Aug. 26, 2009)[,] report and recommendation adopted,
10   > 2009 WL 3211406 (E.D. Cal. Sept. 30, 2009) ("Even though
     > plaintiff has not suffered physical injury, as required by the PLRA
11   > for emotional damages claims, the Ninth Circuit does not enforce
     > this aspect of the PLRA for First Amendment purposes.") (citing
12   > Canell, 143 F.3d at 1213; Lombardelli v. Halsey, No. 1:08–cv–
     > 00658–AWI–DLB PC, 2012 WL 2529225, at *9 (E.D. Cal. June
13   > 29, 2012)[,] objections overruled, 2012 WL 4089944 (E.D. Cal.
     > Sept. 17, 2012)[,] report and recommendation adopted in part, 2013
14   > WL 1278508 (E.D. Cal. Mar. 26, 2013) (noting that "[t]he prior
     > physical injury requirement is not applicable to Plaintiff's other
15   > claims for violation of the First Amendment.") (citations omitted).

16

17   (Plaintiff's Reply, ECF No. 199 at 9.)

18

19   _____

     [13] Plaintiff also cites Phillips v. Hust, 477 F.3d 1070 (9th Cir. 2007), cert. granted, judgment
     vacated by Hust v. Phillips, 555 U.S. 1150 (2009) (remanding for reconsideration in light of
20   Pearson v. Callahan, 555 U.S. 223 (2009)).  In Phillips, the Ninth Circuit affirmed entry of
     summary judgment in favor of a prisoner who claimed that a prison librarian violated his First
21   Amendment right of access to the courts by denying him materials to properly bind a petition for
     writ of habeas corpus.  In a footnote, the Ninth Circuit noted:
22
     > [Defendant] Hust argued in the district court that under the Prison
23   > Litigation Reform Act, 42 U.S.C. § 1997e(e), damages for
     > emotional distress are unavailable here.  She has not renewed this
24   > argument on appeal, and it is in any case belied by our decision in
     > Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998), on which
25   > we held that the Prison Litigation Reform Act "does not apply to
     > First Amendment Claims regardless of the form of relief sought."
26
     477 F.3d at 1082 n.6.  However, given that the Supreme Court eventually vacated the judgment,
27   and that on remand, the Ninth Circuit granted the defendant summary judgment on qualified
     immunity grounds, it is difficult to know how much weight to give this footnote.
28

1      However, this view is not unanimous among Eastern District judges.  See, e.g., Joseph v.

2  Parciasepe, No. 2:14–cv–00414 AC P, 2014 WL 2807654 at *3 (E.D. Cal. Jun. 20, 2014) (noting

3  that Canell reaches a contrary conclusion, but nevertheless holding that "as to all three claims for

4  relief alleged in the complaint [including one for First Amendment retaliation], plaintiff has failed

5  to identify any actual physical injury he suffered as a result of the alleged violations.  Emotional

6  distress is not a sufficient harm under § 1983.")

7      After careful consideration, it appears that the soundest reading of the quoted passage in

8  Canell is that prisoner plaintiffs may seek compensatory damages for First Amendment violations

9  based on alleged mental and emotional injuries, even if they have not presented evidence of

10  accompanying physical injury.  Defendants contend that "[u]nder the holdings of Canell . . . and

11  [a] host of other federal courts in different circuits, § 1997e(e) does not bar Plaintiff's due-process

12  and retaliation claims in this case, because he may recover compensatory damages 'wholly aside

13  from any physical injury he can show, or any mental or emotional injury he may have

14  [in]curred.'" (Correction to Defendants' Opposition, ECF No. 198 at 1) (quoting Canell, 143 F.3d

15  at 1213).  For the court to adopt defendants' position would be, in essence, to hold that a

16  constitutional violation can, in and of itself, give rise to compensatory damages irrespective of

17  whether that violation is accompanied by proof of mental, emotional, or physical injuries.  Such a

18  holding would run afoul of numerous Supreme Court precedents barring freestanding damages

19  for constitutional violations absent proof of injury.  See Carey v. Piphus, 435 U.S. 247, 264

20  (1978) (finding that compensatory damages for "mental and emotional distress" stemming from a

21  § 1983 violation may not be presumed "without proof that such injury was actually caused");

22  Memphis Cmty. School Dist. v. Stachura, 477 U.S. 299, 310 (1986) (holding that "damages based

23  on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of

24  compensatory damages in [§ 1983] cases."); Farrar v. Hobby, 506 U.S. 103, 113 (1992)

25  (interpreting Carey and Stachura to mean that "no compensatory damages may be awarded in a

26  § 1983 suit absent proof of actual injury.").

27      In Stachura, the Court wrote that "compensatory damages may include not only out-of-

28  pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, . . .,

1   personal humiliation, and mental anguish and suffering.'"  477 U.S. at 307 (quoting Gertz v.

2   Robert Welch, Inc., 418 U.S. 323, 350 (1974)).  Given (i) this definition of compensatory

3   damages, (ii) the fact that a prisoner is exceedingly unlikely to suffer monetary damages from a

4   First Amendment violation, and (iii) the Supreme Court's prohibition on freestanding damages

5   for constitutional violations, it would appear that any compensatory damages awarded to a

6   prisoner plaintiff for a Section 1983 violation must arise from a mental, emotional, or physical

7   injury.  It therefore follows that the only meaningful interpretation of the statement "§ 1997e(e)

8   does not apply to First Amendment Claims regardless of the form of relief sought," Canell, 143

9   F.3d at 1213, consonant with these Supreme Court precedents is that prisoners may seek damages

10  based on mental or emotional injuries arising from First Amendment violations even if they are

11  unable to prove an accompanying physical injury.  Therefore, plaintiff will be permitted to argue

12  for compensatory damages for mental or emotional injuries in conjunction with any successful

13  First Amendment retaliation claim herein.

14           2.  May plaintiff seek damages for time that he spent in the SHU as a result

15              of alleged retaliation and/or procedural due process violations?

16  Plaintiff contends that he may seek "compensatory damages for time spent in the SHU as

17  a result of Defendants' unlawful retaliation or denial of his procedural due process rights

18  regardless of whether Plaintiff proves a physical injury."  (Plaintiff's Brief, ECF No. 195 at 12.)

19  Defendants disagree, writing:  "If Plaintiff prevails on his due-process claim, his only

20  remedy is to have the procedural defect corrected.  [. . .]  And if Plaintiff prevails on his

21  retaliation claim, he cannot recover for the time spent in SHU because his validation was

22  supported by some evidence.  Hence, plaintiff may not recover damages for his placement in

23  SHU."  (Defendants' Brief, ECF No. 197 at 9.)

24  Plaintiff is correct that, if he prevails on his retaliation claim, he may appropriately seek

25  compensatory damages for time spent in the SHU.  Defendants' argument that plaintiff "cannot

26  recover for the time spent in SHU because his validation was supported by some evidence" (ECF

27  No. 197 at 9) is not necessarily dispositive.  Defendants treat this proposition as self-evident.  The

28  court does not agree.

23

1    First, as discussed above, if the jury finds that defendants put plaintiff in for gang

2    validation for retaliatory reasons, the jury could also find that but for such retaliation, plaintiff

3    would not have been validated and placed in the SHU.  Moreover, as also discussed above, if

4    plaintiff prevails on his retaliation claim, he can seek compensatory damages for injuries suffered

5    as a result of defendants' retaliatory acts.  One such injury is, presumably, his confinement in the

6    SHU.  Accord McCoy v. Spidle, No. CV–07–198–SMM, 2011 WL 1486560 at *3 (E.D. Cal.

7    Apr. 19, 2011) (allowing plaintiff to seek compensatory damages for SHU placement in

8    connection with First Amendment retaliation claim).

9    At least one other court has similarly held that prisoners may recover for time spent in the

10   SHU following procedurally-defective validation proceedings, if defendants are unable to show

11   that the plaintiff would have been assigned to the SHU if afforded adequate due process.  In a

12   lengthy, searching order, Judge Whyte of the Northern District of California addressed the

13   identical issue as follows:

14              [Plaintiff] is further entitled to compensation for any injury he can
                prove was actually caused by the denial of procedural due process
15              itself.  As to damages for the substantive deprivation of liberty,
                i.e.[,] confinement in the SHU, plaintiff's ability to recover depends
16              on whether the deprivation was justified.  While the Ninth Circuit
                does not appear to have ruled on the issue, a majority of circuits to
17              consider the question have held that the burden rests on the
                defendant to prove that the substantive outcome would have been
18              the same even if the plaintiff's due process rights had been
                respected.  [citation and discussion of opinions issued by Second,
19              Third, Fifth, Sixth, Seventh, and Eighth Circuits omitted.]  Here,
                while the court has held that there was "some evidence" to support
20              defendants' decision to keep plaintiff in the SHU, Dkt. No. 132 at
                11-12, the court does not believe that finding is dispositive.  Simply
21              because defendants could have still concluded plaintiff should
                remain in the SHU does not mean they would have.  [. . .]  In an
22              analogous situation, the court in Patterson[v. Coughlin, 905 F.2d
                564, 569-70 (2nd Cir. 1990),] held that the defendants could not
23              simply maintain that, no matter what defense would have been
                presented, the hearing officer would not believe it and would still
24              have subjected the plaintiff to discipline.  The court reasoned that:

25                      An inmate subject to a disciplinary hearing is
                        entitled to, inter alia, an impartial hearing officer.
26                      Our conception of an impartial decisionmaker is one
                        who, inter alia, does not prejudge the evidence and
27                      who cannot say, with the utter certainty advanced by
                        these defendants, how he would assess evidence he
28                      has not yet seen.

24

1
2
3
4
5

> Id. Similarly here, the pertinent question is whether plaintiff's gang status review would have ended in the same result even if he had been afforded due process *and* an impartial decisionmaker who considered the defense he offered. [. . .] Thus, if defendants cannot meet their burden to prove that plaintiff would have been kept in the SHU even if he received due process, plaintiff will also be entitled to damages for the time he was in the SHU as a result of the deficient proceedings.

6   Reyes v. Horel, No. C-08-04561 RMW, 2012 U.S. Dist. LEXIS 101331 at *4-6 (N.D. Cal. Jul.

7   19, 2012) (emphasis in original).  The court finds the reasoning in Reyes sound, and in the

8   absence of a compelling justification put forward by defendants to rule otherwise, will allow

9   plaintiff to seek compensatory damages for time spent in the SHU in connection with his

10  procedural due process claims, if (i) he is able to prove that the procedures leading to his gang

11  validation were defective and (ii) defendants fail to prove that proper procedures would have led

12  to plaintiff's validation.

13          Defendants are nevertheless correct that plaintiff cannot recover compensatory damages

14  based on mental or emotional injury as a result of procedural due process violations, absent a

15  showing of a greater-than-*de minimis* physical injury.  See Oliver v. Keller, 289 F.3d 623, 630

16  (9th Cir. 2002) ("The district court correctly interpreted § 1997e(e) to require a showing of more

17  than de minimis physical injury in order to recover compensatory damages for mental or

18  emotional injury.").[14]

19          Based on the numerous points of agreement in the parties' briefing, and the analysis

20  above, it appears that if plaintiff prevails on his retaliation claim, he may seek the following

21
22
23
24
25
26
27
28

[14] Oliver concerned a pretrial detainee who alleged violations of the Fourteenth Amendment based on a lack of medical care and the conditions in holding cells.  Plaintiff sought damages for physical and emotional injuries allegedly stemming from the alleged deprivations.  The district court granted defendants' motion for summary judgment, on the grounds that 42 U.S.C. § 1997e(e) barred plaintiff's claims "because he failed to demonstrate more than a *de minimis* injury."  289 F.3d at 626.  The Ninth Circuit upheld the grant of summary judgment in part, holding that the plaintiff "has alleged only *de minimis* physical injury, and is [therefore] barred from pursuing claims for mental and emotional injury."  Id. at 629.  However, the appeals court ruled that "[t]o the extent that appellant's claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred[,]" and denied summary judgment on those grounds.  Id.at 630.  The Oliver panel did not address what possible basis there might be for compensatory damages other than physical, mental, or emotional injury, instead focusing on the availability of nominal and punitive damages to prisoner plaintiffs irrespective of 42 U.S.C. § 1997e(e).

remedies:

- Nominal damages
- Compensatory damages for mental and emotional injuries, including any injuries stemming from SHU placement
- Punitive damages
- Injunctive relief, in the form of expungement of plaintiff's gang validation and a new hearing.[15, 16]

Likewise, if plaintiff prevails on his procedural due process claims, he may seek the following remedies:

- Nominal damages
- Compensatory damages for mental and emotional injuries resulting from retaliation, including any injuries stemming from SHU placement
- Compensatory damages for mental and emotional injuries resulting from procedural due process violations, if plaintiff first demonstrates a greater-than-*de minimis* physical injury resulting from these violations, and defendants then fail to prove that proper procedures would have led to plaintiff's validation.
- Punitive damages
- Injunctive relief, in the form of expungement of plaintiff's gang validation and a new hearing.

E.  Should the trial be bifurcated?

The court asked the parties to brief the following question:

---

[15] Plaintiff asserts that he is entitled to expungement of his gang validation and a new hearing if he prevails on his retaliation claim.  (See Plaintiff's Brief, ECF No. 195 at 14-15.)  Defendants did not address this point in their briefing, except to note their agreement with the court's view that "if plaintiff seeks only nominal damages and an order releasing him from the SHU, then bifurcation would be unnecessary." (Defendants' Brief, ECF No. 197 at 10.)  The court has found no case reaching a contrary conclusion.

[16] The remedy for a procedurally-defective hearing is a new hearing, not an order regarding the substantive outcome.  See Raditch v. United States, 929 F.2d 478 (9th Cir. 1991).

1        •   What are the parties' views on trial bifurcation, with the jury first considering

2             the issue of defendants' liability on plaintiff's procedural due process and

3             retaliation claims, and if liability is found, only then considering the issue of

4             damages?

5        Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid

6 prejudice, or to expedite and economize, the court may order a separate trial of one or more

7 separate issues [or] claims . . . ." Id. The decision to bifurcate is committed to the sound

8 discretion of the trial court. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985).

9 Bifurcation, however, is the exception, rather than the rule of normal trial procedure; Rule 42(b)

10 allows, but does not require, bifurcation to further convenience or avoid prejudice. See Hangarter

11 v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004); see also Advisory

12 Committee Note to Fed. R. Civ. P. 42 (1966 amendment) ("[S]eparation of issues for trial is not

13 to be routinely ordered[.]"). Courts consider several factors in determining whether bifurcation is

14 appropriate, including separability of the issues, minimization of jury confusion, and prejudice to

15 the parties. See Hirst v. Gertzen, 676 F.2d 1252, 1261 (9th Cir. 1982).

16        Both parties appear in favor of trial bifurcation. Plaintiff argues for bifurcating the trial

17 into liability and remedies phases. (See Plaintiff's Brief, ECF No. 195 at 2.) Defendants concur,

18 stating that "if Plaintiff seeks compensatory damages . . . or punitive damages, as his brief

19 indicates he will, then Defendants agree with the Plaintiff that the trial should be bifurcated."

20 (Defendants' Brief, ECF No. 197 at 11.)

21        Bifurcation into liability and remedies phases indeed appears appropriate in this case, and

22 not only because the parties are in agreement on the matter. During the liability phase, evidence

23 of general conditions in the SHU is almost certainly relevant to plaintiff's retaliation claim. Per

24 McCoy:

25            In this case, the Court will permit limited evidence of conditions
           and events at SHU . . . on the retaliation claim because such

26            evidence is both relevant and more probative than prejudicial.
           Fed.R.Evid. 401 – 403. Evidence of restrictive conditions at SHU

27            could make it more likely that [defendant] had a retaliatory motive
           in allegedly reassigning Plaintiff to that facility.

28

1    Id., 2011 WL 1486560 at *4.  Similarly, to the extent that plaintiff can show that defendants knew

2    that gang validation would likely lead to a SHU placement in the instant case, evidence of this

3    knowledge is relevant to several elements of a retaliation claim, including whether plaintiff was

4    subjected to an adverse action, and whether that action chilled the exercise of his First

5    Amendment rights.  See Rhodes, 408 F.3d at 567-68.  However, greater evidence of SHU

6    conditions and what plaintiff personally experienced will likely be relevant to the issue of

7    damages if plaintiff prevails on either or both of his claims.

8           A second reason for bifurcation is if plaintiff prevails on his procedural due process claim,

9    as discussed above, defendants will then have the burden of proving that plaintiff would have

10   been sentenced to the SHU even if he had been accorded adequate due process.  Consequently, if

11   the jury finds the defendants liable on plaintiff's procedural due process claim, in connection with

12   the jury's determination of damages the court is inclined to then instruct the jury as to the court's

13   previous "some evidence" finding.

14          In reaching such a conclusion, the court is aware of the difference in the quantum of

15   evidence required to satisfy state regulations governing inmate gang validation when compared to

16   the federal "some evidence" test.  In mid-2006, when plaintiff was validated as a gang associate,

17   applicable California regulations defined an "associate" of a prison gang as "an inmate/parolee

18   who is involved periodically or regularly with members or associates of a gang."  Cal. Code Regs.

19   tit. 15, §§  3378(c)(4),(7) (2006).  Validation as a prison gang associate required "at least three (3)

20   independent source items of documentation indicative of association with validated gang

21   members or associates."  Id. (listing thirteen categories of source items).  At least one of the

22   source items was required to be "a direct link to a current or former validated member or

23   associate of the gang."  Id.  "If a source item does not categorically evidence gang affiliation or

24   activity, prison officials may only rely on it if they can articulate how that item provides such

25   evidence."  Castro v. Terhune, 712 F.3d 1304, 1311 (9th Cir. 2013) (summarizing provisions of

26   15 Cal. Code Regs. § 3378).

27          By contrast, a validation decision meets federal substantive due process requirements if it

28   is supported by "some evidence."  Bruce, 351 F.3d at 1287 (citing Superintendent v. Hill, 472

28

U.S. 445, 454 (1985)).  A single piece of evidence may be sufficient to meet the "some evidence"

requirement if it has "sufficient indicia of reliability."  Id. at 1288 (citing Toussaint v. McCarthy,

926 F.2d 800, 803 (9th Cir. 1990)).  "'[T]he relevant question is whether there is any evidence in

the record that could support the conclusion.'"  Id. at 1287 (quoting Hill, 472 U.S. at 455.)

It is evident that validating an inmate as a gang associate under California law requires a

more rigorous evidentiary showing than establishing that federal due process standards for

validation were met.  However, the court is reluctant to conduct another in camera review of

confidential documents, this time in light of applicable California regulations, while holding the

jury out between the liability and remedies phases (moreover, the court previously found at least

three of the source items being "some evidence," although admittedly not under the applicable

California regulations).  Alternatively, to allow the jury to view the confidential documents

during the remedies phase would appear to subvert the reasons why the court conducted the prior

in camera review in the first place.  Thus, it seems appropriate in a damages phase, if any, to

instruct the jury that the court has found that there was "some evidence" for the committee's

decision to validate plaintiff as a gang member, but it is up to the jury to decide how much weight

to give that finding as to plaintiff's damages, if any, for being placed in the SHU.

In light of this proposal, the court will grant the parties leave to file supplemental briefs

addressing whether the parties propose other procedures that ought to be employed at the

remedies phase to resolve the issue of whether, for purposes of determining damages, plaintiff

would have been sentenced to the SHU even if he had been accorded adequate due process.

III.  Conclusion

Based on the foregoing, IS HEREBY ORDERED that:

1.  Jury trial herein will be bifurcated into two phases:  a liability phase and, if one or

more defendants are found liable, a remedies phase.

2.  During the liability phase, no party will be permitted to introduce evidence of the

court's "some evidence" finding.

3.  During the liability phase, either party may introduce evidence of the Institutional

Classification Committee's validation determination in connection with plaintiff's retaliation

29

1   claim – along with a limiting instruction that the committee's conclusion does not address

2   plaintiff's procedural due process claim.

3       4.  The parties will stipulate to the date of the alleged gang activity described in the Bales

4   Memo and the jury will be informed of this fact.

5       5.  The parties will be permitted to introduce the Parker Memo and the exhibits into

6   evidence, published for the jury's eyes only.

7       6.  If plaintiff prevails on his retaliation claim, he may seek the following remedies:

8   nominal damages; compensatory damages for mental and emotional injuries, including any

9   injuries stemming from SHU placement; punitive damages; and injunctive relief, in the form of

10  expungement of plaintiff's gang validation and a new hearing.

11      7.  If plaintiff prevails on his procedural due process claim, he may seek the following

12  remedies: nominal damages; compensatory damages for mental and emotional injuries, including

13  any injuries stemming from SHU placement; compensatory damages for mental and emotional

14  injuries resulting from procedural due process violations, if plaintiff first demonstrates a greater-

15  than-de minimis physical injury resulting from these violations, and defendants then fail to prove

16  that proper procedures would have led to plaintiff's validation; punitive damages; and injunctive

17  relief, in the form of expungement of plaintiff's gang validation and a new hearing.

18      8.  If either party disagrees that the jury should be instructed as to the court's "some

19  evidence" finding during the remedies phase (in connection with the jury's determination of

20  whether plaintiff would have been sentenced to the SHU even if he had been accorded adequate

21  due process), that party may file a brief within thirty days of the filing of this order suggesting

22  alternate means for the jury to make this determination.

23      9.  Within thirty days of the filing of this order, the parties shall file statements with the

24  court indicating the dates on which they are available for trial in 2016 and their best estimates as

25  to the length of trial.

26  Dated:  January 4, 2016

27

28  rios0790.issues

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE